B. T. DYKES, *as Sheriff*, *etc.*, *et al.*, v. THE LOCKWOOD
MORTGAGE COMPANY.

No. 199.

1. TAXATION—*Statute Construed—Notice of Change on Tax-roll.*
The notice required by paragraph 6918, General Statutes of 1889, is
jurisdictional in its nature, and the county clerk or board of county
commissioners has no authority under such paragraph either to
add to the valuation of property listed for taxation or to place ad-
ditional property upon the tax-roll for taxation without giving the
notice required by said paragraph.

2. ——— *Judgment—Situs.* Under our statutes, a judgment has
no *situs* for the purpose of taxation distinct and apart from the
domicile of the owner.

MEMORANDUM.—Error from Stafford district court;
ANSEL R. CLARK, judge. Action by The Lockwood
Mortgage Company against B. T. Dykes, as sheriff of
Stafford county, and others, to enjoin the sale o
certain land.' Judgment for plaintiff. Defendants
bring the case to this court. Affirmed. The opinion
herein, filed January 17, 1896, states the material
facts.

*O. C. Jennings*, and *G. L. Garrigues*, for plaintiffs in
error.

*Moseley & Dixon*, for defendant in error.

The opinion of the court was delivered by

COLE, J. : On February 20, 1893, Hannah L. White-
side obtained a personal judgment in the district court
of Stafford county against Mary and Frederick Schulz
in the sum of $327, and in the same action, and at the
same time, also obtained a decree of foreclosure direct-
ing a sale of certain real estate situated in the city of
St. John, Stafford county, Kansas. On September 25,
1893, said real estate was sold at sheriff's sale pursuant

Dykes v. Mortgage Co.

to said decree, and Hannah L. Whiteside became the purchaser of the same, holding the same until some time in 1894, when, for a valuable consideration, she conveyed the said real estate to the Lockwood Mortgage Company, which, at the time of the commencement of this action, was the legal owner thereof. On the 3d day of August, 1893, the board of county commissioners of Stafford county made an order and caused the same to be entered of record on its journal in the office of the county clerk of said county, which order directed the clerk of the district court to list all judgments shown by the records of his office, and certify the same to the county clerk, and directed the county clerk to place said list of judgments on the 1893 tax-rolls to be taxed as other personal property of that year. In October, 1893, the said board made a further order, to the effect that whoever filed an affidavit with the county clerk that the judgments in his favor were of no personal value should be exempt from having such judgments placed upon the tax-roll. Some time between the making of the first and second orders the clerk of the district court of Stafford county furnished the required list to the county clerk, and upon such list was the judgment of Hannah L. Whiteside above referred to. Said judgment was not entered upon the personal-property tax-rolls of any township, city or school district of said county but was entered upon the real-estate tax-rolls of said county and there was levied and assessed against said judgment a tax in the sum of $7.96. In March, 1894, the county treasurer of Stafford county issued to the sheriff a personal-property warrant for the amount above specified, being the unpaid taxes on such judgment as shown on the tax-roll, and the sheriff returned said tax warrant unsatisfied, and the tax warrant with

the indorsements thereof was filed with the clerk of the district court on May 23, 1894, and by that officer entered upon the judgment docket of said court against Hannah L. Whiteside in the sum of $7.96. On December 20, 1894, the clerk of the district court of Stafford county issued to the sheriff of said county a real-estate tax warrant commanding said sheriff to make said sum of $7.96 out of the lands and tenements of Hannah L. Whiteside, and, under such warrant, the sheriff advertised the real estate above referred to for sale.   Prior to the issuance of the real-estate tax warrant defendant in error had purchased said real estate from Hannah L. Whiteside without any personal knowledge of any lien or claim of the board of county commissioners of Stafford county. During all the times above mentioned Hannah L. Whiteside was a non-resident of the state of Kansas, and had no business located within said state.   No assessor of Stafford county assessed or attempted to assess the judgment in her favor, and no notice was either given or attempted to be given by the county clerk or the board of county commissioners of Stafford county to Hannah L. Whiteside, or defendant in error, of the listing or assessment of said judgment, nor had either of said parties any notice of either of the orders made by the board of county commissioners until after the real estate had been advertised for sale and no attempt was made either by the county clerk or board of county commissioners of Stafford county to give any notice to such parties of either of said orders.

This action was commenced by the defendant in error in the district court of Stafford county for the purpose of enjoining the sale of said lands, and on January 23 the probate judge of Stafford county, in

Dykes v. Mortgage Co.

the absence of the Hon. Ansel R. Clark, judge of the district court, granted a temporary restraining order. The petition filed in this case recited the facts as above set forth, and plaintiffs in error filed their demurrer to the same upon the following grounds, to wit: (1) That the petition did not state facts sufficient to constitute a cause of action; (2) that several causes of action were improperly joined; and (3) that there was a defect of parties defendant. The demurrer was overruled, and plaintiffs in error not desiring further to plead, the district court granted a permanent injunction, from which ruling and judgment of the court the plaintiffs in error bring the cause here for review, the judge of said court having certified that this is one of the excepted cases referred to in chapter 245 of the Laws of 1889, as it involved the tax and revenue laws of the state of Kansas.

Several important questions are presented in this case. The most important of which, as is conceded by both plaintiffs and defendant, is the right of the state or county to levy a tax upon a judgment rendered in this state and belonging to a non-resident. We shall endeavor to answer each of the questions presented.

The defendant in error contends, first, that as the assessment of this judgment was not placed upon the personal property tax-roll of any city, school district or township of Stafford county the tax was therefore void. Our opinion is that in this regard the contention of defendant in error is not correct, and that, in such a case, the tax would be at most only voidable, and, before an injunction could be allowed to restrain the collection thereof for that reason, there must have been a tender made upon some reasonable valuation of the property attempted to be taxed. (*Comm'rs of*

*Leavenworth Co. v. Lang,* 8 Kan. 284; *City of Lawrence
v. Killam,* 11 id. 499.)

The defendant in error further contends that, where
no assessment has been made by the assessor of any
city or township of any personal property within a
given county, and the county clerk or board of county
commissioners of said county proceeds under para-
graph 6918, as was done in this case, to place the
omitted personal property upon the tax-roll, the
first step necessary to be taken in order to make a tax
levy upon such property valid must be the giving of
the notice required by said paragraph. Such para-
graph, so far as it is here applicable, reads as follows :

''The county clerk, or board of county commissioners,
if he or they shall have reason to believe that   .   .   .
the assessor has not returned the full amount required
to be listed in his city or township, or has omitted any
personal property, moneys, credits,   .   .   .   which are
by law subject to taxation, shall proceed at any time be-
fore the final settlement with the county treasurer to
correct the returns of the assessor, and to charge such
person, company or corporation on the tax-roll with
the proper amount of taxes ;  to enable him to do which
he is hereby authorized and empowered to issue com-
pulsory process, and require the attendance of any
person or persons whom he may suppose to. have a
knowledge of the value of such articles of personal
property, moneys, credits,   .   .   .   and examine
such person or persons, on oath or affirmation, in re-
lation to the statement or returns. And it shall be
the duty of the said clerk, in all such cases, to give at
least five days' notice to such person, company or cor-
poration, by the sheriff leaving a copy of the notice
with the person, if he resides in the county ; and if
the person does not reside in the county, then by put-
ting a copy of said notice in the post-office, properly
directed to said person, and if a company or corpora-
tion, by leaving a copy of the notice at the nearest and
usual place of business of said company or corporation,

*before entering the said increased valuation on the tax-roll, that the said person, company or corporation* may have an opportunity of showing that the statement or return to the assessor was correct.''

In the case of *Coal Co. v. Emlen*, 44 Kan. 117, in referring to this section, the court says :

"To enable the county clerk or board of county commissioners to successfully correct such returns, the county clerk is authorized to issue compulsory process and bring before him any persons who he may suppose have knowledge upon the subject ;    .    .    . But before the county clerk or board of county commissioners shall proceed to correct any return of the assessors, they must give the property owner five days' notice, to be served as required by section 70.''

The notice prescribed in the paragraph above quoted is therefore jurisdictional in its character, and in order for the board of county commissioners or the county clerk to enter upon the assessment rolls personal property which has been omitted by the assessor, whether such omission be intentional or by mistake, and assess a legal tax thereon, there must first be served in the manner prescribed by the statute the five days' notice therein referred to.

Two other questions presented may be considered together.  It is contended upon the part of the defendant in error that no valid levy was made upon the land in question ; and upon the part of the plaintiffs in error it is contended that the defendant in error is in no position to challenge the tax in question, for the reason that this proceeding is a collateral attack upon the judgment of a competent court. Neither position is correct.  ·The statute provides what may be termed a special proceeding, which is summary in its nature, for the purpose of collecting the revenues needed for conducting the business of

the different political divisions of the state and providing for the protection of her citizens, and if the provisions of the statute are fulfilled by the proper authorities that is all that is necessary. Besides, in this case, if the tax was a valid one, defendant in error took the land with constructive notice of the tax lien. For the same reason, viz., that the proceeding is a summary one, special in its nature, the record made in the office of the clerk of the district court upon the judgment docket does not rise to the dignity of a judgment rendered by the court which has had all the parties properly before it. And, in a case like this one, where no attempt has been made to serve the notice required by statute, the proceeding would be void and subject to collateral attack. (*McNeill v. Edie*, 24 Kan. 108.)

We come now to the most important question in this case, which is one that has been the subject of litigation for many years in this country. The writer of this opinion has approached its decision with considerable reluctance, and yet with a clear personal view as to the law as established by the great weight of authority. The taxing power of the state is one which should be zealously guarded within a reasonable construction of the constitutional and statutory provisions affecting the same.

Our statute provides that "All property in this state . . . shall be subject to taxation." (Gen. Stat. 1889, ¶ 6846.)

"The term 'personal property' shall include every tangible thing which is the subject of ownership ; . . . also all tax-sale certificates, judgments, notes, bonds, and mortgages, and all evidences of debt secured by lien on real estate." (Gen. Stat. 1889, ¶ 6847.)

The decision of this whole question, of course, de-

pends upon the answer to the question : Where is the *situs* of a judgment rendered in a court of this state in favor of a non-resident? A judgment is a property of an intangible character and can hardly be said to have any actual *situs* anywhere. It cannot be seized by any kind of process, and whatever *situs* it has must be fixed either by the residence of the owner thereof, or by a location given to it from the place of its rendition or the character of the judgment rendered. It is contended on the part of the plaintiffs in error that the *situs* of the judgment in question is fixed in Stafford county because the same was there rendered and appears of record, and also, because it is a lien upon real estate situate in that county. Under our statutes, after the rendition of a judgment, a transcript thereof may be taken from the office of the clerk of the district court of the county in which it is rendered and filed in the district clerk's office in any other county or counties of the state, having from the time of such filing the same force and effect as it possessed in the county where such judgment was rendered. As personal property must be taxed either at the place of residence of the owner or the place of its *situs*, if the same is separate and apart from the residence of the owner, the question would then arise, in which county the *situs* of a judgment was, where one or more transcripts had been filed in one or more counties of the state, and the owner of such judgment was a non-resident of the state. In that case the judgment would have as much of an abiding place in a county in which a transcript was filed as in the county in which it was originally rendered. There must be some reason, then, stronger than that a judgment was rendered in a certain county to tax the same, when it is the property of a non-resident, because the

*situs* must be definitely determined and fixed at the point of taxation in order to give the proper officials control over the same for that purpose.

Is the power to tax a judgment gained by reason of the fact that it is rendered upon the foreclosure of a mortgage upon lands within any given county? We are, of the opinion that it is not. In this state a mortgage of real property is in no sense a conveyance of any interest in land, but is merely a security; and reducing the debt secured by mortgage to judgment does not alter that condition, which remains the same until sale and confirmation under the decree of the court. There is, therefore, no interest in lands reached by taxing such a judgment. Besides, the mortgage securing a single debt is frequently given upon real estate situated in several counties, and the action to foreclose the same may be brought and judgment obtained in any one of the counties in which the land described in the mortgage is situated. Such being the case, if the power to tax were gained by reason of the fact that the judgment was a lien upon the real estate described in the mortgage, the question would naturally arise, in which county would a judgment, rendered upon foreclosure of a mortgage upon lands in several distinct counties, be taxable? If the reason is a sound one, then such a judgment would be liable for taxation in either or all of the counties where the lien was created thereby, and that would be contrary to all the true doctrines of taxation. The supreme court of this state has never passed upon this question, and we are relegated to the decisions of courts of last resort in other states and text-writers upon the subject to determine what is the correct doctrine. One of the principal cases bearing upon this point is *State Tax on Foreign-*

15—2 APP.

*Held Bonds*, reported in 15 Wall., at page 300, and cited in nearly all the subsequent authorities on this subject. The opinion in that case was delivered by Field, J., and is exhaustive in its citations and reasoning. In that case, after referring to the law of Pennsylvania, which, like that of our own state, prescribes that a mortgage, though in form a conveyance, is merely a security for the debt, the court says:

"Such being the character of a mortgage in Pennsylvania, it cannot be said, as was justly observed by counsel, that the non-resident holder and owner of a bond secured by a mortgage in that state owns any real estate there. A mortgage being there a mere chose in action, it only confers upon the holder or the party for whose benefit the mortgage is given a right to proceed against the property mortgaged, upon a given contingency, to enforce, by its sale, the payment of his demand. This right has no locality independent of the party in whom it resides. It may undoubtedly be taxed by the state when held by a resident therein, but when held by a non-resident it is as much beyond the jurisdiction of the state as the person of the owner."

In that case, also, the court cites approvingly the case of *People v. Eastman*, 25 Cal. 603, where the same question was discussed as presented here. Sawyer, J., in delivering the opinion of the court in the case of *People v. Eastman*, supra, says:

"The money at interest, debt or obligation is the principal thing, and the mortgage is only a security — a mere incident to the debt or obligation. The mortgage has no existence independent of the thing secured by it; a payment of the debt discharges the mortgage. The thing secured is intangible, and has no *situs* distinct and apart from the residence of the holder. It pertains to and follows the person. The same debt may, at the same time, be secured by a mortgage upon land in every county in the state; and

if the mere fact that the mortgage exists in a particular county gives the property in the mortgage a *situs* subjecting it to taxation in that county, a party, without further legislation, might be called upon to pay the tax several times — for the lien for taxes attaches at the same time in every county in the state, and the mortgage in one county may be a different one from that in another, although the debt secured is the same. The fact that a mortgage has been foreclosed and the lien carried into a judgment does not, in our opinion, change the character of the property with reference to the question under discussion. The principal thing is still a debt, secured by a judgment lien instead of a mere mortgage lien.''

In the case of *City of Davenport v. M. & M. Rld. Co.*, 12 Iowa, 539, this same question was under discussion. The statute of that state with reference to the taxation of property within the state was similar to our own. In that case the court says:

'' We cannot concede, however, that it was the intention of the legislature to tax mortgages when owned by non-residents of the state. Section 3 of said act provides that all other property, real and personal, *within this state* is subject to taxation, etc., and mortgages and other security are within the classes of property named. Is a mortgage owned by a non-resident property within this state, within the meaning of this section? A mortgage, so long as the right of redemption continues, is real estate. Both in law and equity the mortgagee has only a chattel interest. See Willard on Mortgages, vol. 1, page 163. It is true that the *situs* of the property mortgaged is within the jurisdiction of the state, but the mortgage itself, being personal property, a chose in action, attaches to the person of the owner. See Story, Confl. of Laws, § 379. It is agreed by the parties that the owners and holders of the mortgages are non-residents of the state. If so, and the property in the mortgage attaches to the person of the owner, it follows that these mortgages

are not property within the state, and, if not, they are not the subject of taxation.''

A similar doctrine is laid down in the case of *Worthington v. Sebastian*, 25 Ohio St. 1, in the following language:

"Intangible property has no actual *situs*. If, for purposes of taxation, we assign it a legal *situs*, surely that *situs* should be the place where it is *owned*, and not the place where it is *owed*. It is incapable of a separate *situs*, and must follow the *situs* either of the creditor or the debtor. To make it follow the residence of the latter is to tax the debtor and not the creditor, to tax poverty instead of wealth.''

We might add to the cases above cited a long list of similar authorities, but will only cite the following: 1 Desty, Tax. 326; Cooley, Tax. (2d ed.), 15, 21, 22; *Herriman v. Stowers*, 43 Me. 497; *City of St. Paul v. Merritt*, 7 Minn. 258; *Catlin v. Hull*, 21 Vt. 152; *Kirtland v. Hotchkiss*, 100 U. S. 491.

It is true that cases have been cited from the states of Michigan and Oregon holding apparently a contrary doctrine, but an examination of those authorities shows that they are founded upon special statutes which expressly provide that a mortgage by which a debt is secured upon land within those states shall, for the purpose of taxation, be deemed and treated as an interest in the land so pledged. The force of those authorities, then, is simply that the courts of those two states have determined that the legislature, in their opinion, have the power to fix the *situs* for the purpose of taxation at the place of the location of the property mortgaged, and that for such purposes real-estate mortgages may be treated as an interest in lands. Upon the other hand, the cases above cited in support of the doctrine here announced, together with the nu-

merous decisions along the same line, are all upon the basis that personal property, consisting of mortgages and debts generally, has no *situs* independent of the domicile of the owner, and such decisions are founded upon statutes similar to our own.   The question as to whether the legislature may provide that, for the purpose of taxation, real-estate mortgages and judgments of foreclosure thereon may be treated as an interest in land, as held by the courts of Michigan and Oregon, is not presented by this case for decision, and, until the legislature of this state shall so provide, it is not necessary for a reviewing court to determine the validity of such a statute.

Plaintiffs in error cite the cases of *Wilcox v. Ellis*, 14 Kan. 588; *Fisher v. Comm'rs of Rush Co.*, 19 id. 414; *Blain v. Irby*, 25 id. 499, as tending to support the position that the judgment in question is taxable in this state.   The first of these cases holds that certain notes given in the state of Illinois, belonging to one who resided in the state of Kansas, and which notes had never been in the state of Kansas but had been by the owner left for collection in the state of Illinois, were not properly taxable in this state.   The second case cited holds that certain notes, which were made and left in the state of Iowa and which had never been in Kansas, were not properly taxable in this state although the owner resided here.   But, in each of these cases, the property in question was tangible property, and the owner thereof had, by a distinct act, fixed a *situs* therefor separate and apart from his own domicile.   This cannot be said to apply where one procures a judgment to be rendered within the limits of this state, for the reason that, in itself, the judgment is intangible in its nature, and is simply a portion of the procedure for the enforcement of a

right, the *situs* of which right can only be, from its very nature at the domicile of the owner. The case of *Blain v. Irby,* supra, simply holds that promissory notes and mortgages are goods and chattels within the meaning of section 92 of the tax law, and may be levied upon and sold by a sheriff holding a tax warrant, provided the sheriff can obtain possession of them without committing any wrong. A distinction between that case and this one is obvious, for the judgment is not subject to levy or execution, and in that case the court draws this distinction in the following language :

" Promissory notes are different from almost all other kinds of choses in action. They may be transferred from one person to another by assignment, or by indorsement, or by mere delivery. They may be transferred about as easily, and almost in the same manner, as a horse or a cow ; and, like a horse or a cow, they have a personal and independent *situs* of their own. *Wilcox v. Ellis,* 14 Kan. 588 ; *Fisher v. Comm'rs of Rush Co.,* 19 id. 414 ; *State Tax,* etc., 15 Wall. 300. They have such an independent *situs* that they may be taxed where they are situated. Of course ordinary choses in action cannot be levied upon by an officer in the ordinary manner, because an officer cannot seize them or take them into his possession."

It is also urged by the plaintiff in error that the levy of the tax in this case should be supported upon the principle that protection and taxation are correlative terms ; that the judgment in question was procured in this state by the assistance of the law and the officials thereof, and that a non-resident could not enforce his rights except through the laws of Kansas. It is true that, in general, the principle above stated applies, but not to the extent claimed by the counsel for the plaintiff in error. For illustration, suppose a resident of Kansas held notes against a person in the

state of Illinois, and that such notes were in the possession of the resident of Kansas at his domicile. Clearly such notes would be subject to taxation in the state of Kansas, and yet the holder of such notes would be compelled to look for protection to the laws of the state of Illinois, where the debtor resided and his property was located.

We are clearly of the opinion that the judgment in question was not subject to assessment and taxation in Stafford county, and that therefore the proceedings by which the property of the defendant in error was sought to be subjected to the payment thereof were void, and that the district court properly enjoined the sale of the real estate in question for the tax upon such judgment.

The judgment of the district court will be affirmed.

All the Judges concurring.