MYERS & HOUSEMAN *vs.* THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY ET AL.

*Taxation—Cattle—Stock in Trade of Merchants—Taxation of Goods Exported to Foreign Countries—Constitutional Law—Notice to Owner of Assessment of Property Not Returned.*

Appellants, cattle dealers, received shipments of cattle bought by them every Wednesday at the stock yards, where they seldom remained longer than one day, being then disposed of to purchasers or exported. They had on hand for one or two days every week an average of $20,000 worth of cattle. *Held,* that such average quantity of cattle being the stock in trade of the parties, is liable to taxation as property within the State just as goods bought by other merchants, since the cattle are not brought into the State for a temporary purpose, but to be held until sold, and it is only owing to the course of trade that they are generally disposed of in one day.

The fact that a part of such cattle assessed for taxation are purchased in other States and are exported to foreign countries, is no objection to the assessment since they are not taxed as exports, but as part of the general mass of property in the State in the usual manner and while they are not in course of transportation.

Although some of the cattle were purchased with the intention of exporting them to foreign countries, the assessment of them when held as above stated is not levying a duty on exports within the provision of the Constitution of the United States, because goods do not cease to be part of the general mass of property in the State subject to taxation until they have been shipped or entered for transportation.

The mere fact that property has been bought for the purpose of exportation does not exempt it from liability to taxation when such property is not in course of transit.

The words "capital stock" in the return of the property owned by the appellants were intended to refer to the property of the parties, and not to money.

The assessment to the appellants was not a transfer from the tax-books of another jurisdiction, but a new assessment of property not returned by the assessor. Before such property can be assessed the County Commissioners are required by Code, Art. 81, sec. 145, to give written notice to the owners. In this case the entry of the assessment was made upon the report of an agent appointed to report newly-discovered property without the notice required by the statute, and the same is therefore invalid.

Appeal from a *pro forma* decree of the Circuit Court for Baltimore County.

The cause was argued before MCSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*S. S. Field* for the appellant.

*D. G. McIntosh* (with whom was *C. Ross Mace* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

The bill in this case was filed by the appellants, to restrain the collection of certain taxes, alleged to be due from them to the appellees.   The assessment upon which these taxes were levied is $20,000, on the " stock in trade— capital stock," of the appellants.   Myers & Houseman are cattle-dealers.   Their principal office is at the Union Stock Yards in Baltimore County. Their gross annual sales amount to about two millions of dollars per annum.   Their cattle are mostly purchased in the Western States ; thence shipped to Baltimore, and there disposed of by the firm—some are shipped to Europe and others are disposed of at home. They also receive and sell cattle on commission.   The market days at the Union Stock Yards, are Wednesday and Thursday.   On the first named day, the original owners sell to the dealers ; and on the next, the dealers retail to the butchers and others, and ship the remainder.   On other days, there is no dealing, except when an occasional load arrives from shippers, who are ignorant of the custom of the trade.   Of the cattle handled by the firm two-thirds are exported, one-sixth sold to butchers, and the residue are on commission.   Of those exported, some are purchased in this State, but the large majority of them come from Western States.   The course of business is as follows : The cattle are expected to and generally arrive on Wednesday. They are then placed in the pens of the Union Stock Yards ; there they remain rarely longer than one day ; so that by

Thursday evening the pens are empty, and so remain until the following Wednesday. Those intended for export, are fed, watered and rested at the yards, and then placed on the ship. Those fit for export, are not of such a class as are offered in the Baltimore market; and none of these are sold there, except when there are more than are wanted for shipment.

The appellants contend that this stock was not liable to taxation because it cannot be considered as property, " within this State "—as the words are employed in the 2nd sec. of Art. 81 of Code. That provision is as follows : " All other property of every kind, value and description, within this State, shall be valued to the respective owners thereof in the manner prescribed by this Code, and shall be assessed and taxed as the property of such respective owners according to such prescribed methods of valuation," &c.

In *Hopkins* v. *Baker*, 78 Md. 363, it was held, that a stock of goods is to be regarded as " permanently located " (within the meaning of the words as used in Art. 3 of sec. 51 of the Constitution), at the place where they are to remain until sold. " The separate articles," the Court says, " constituting the stock, may continue the property of the appellees for a day, a week, a month, a year or longer, but until they are sold they remain permanently in Baltimore, and are not moved from place to place." The stock in trade of the appellants consisted of cattle, and the evidence shows that while they kept this stock on an average of but one day in the week, they did have, sometime, every week at least $20,000 worth of cattle on hand, so that, if the week be regarded as the unit of time (and not the day), they may be said to keep on hand all the time an average of $20,000 worth of cattle. They keep them there for sale ; and as they sell, according to the custom and exigencies of the trade, they replenish with other stock. Suppose, instead of not being fortunate enough to sell each week's receipts in one day, it took them ten days to close them out, so that the second week's consignment would be received before

the first could all be disposed of, this case would then be substantially like that in *78 Md.* and no sufficient reason could be assigned for holding that the cattle " stock in trade," so held for sale, would not be " within the State " for the purposes of taxation.   These cattle are disposed of rapidly, for the simple reason that the expense of keeping them on hand would in a short time destroy the profits of the business.   It is an exigency of the trade.   Ordinary goods may be kept on the shelf for a considerable period of time without loss, but cattle must be sold.   The power of the State to tax an ordinary stock in trade is unquestionable ; can it be, that the power is lost, by any sort of an exigency, that the special trade or class of goods may impose upon the trader ?

When received by the appellees in Baltimore, they are to be kept an indefinite time until sold.   The only disposition to be made of them, is to be sold·; and that this takes but one day, is due to the course of trade, and not to the specific purpose of the firm.   They buy and bring to Baltimore not for the temporary purpose of holding them in Baltimore County one day, but until they are sold, whether it be one day, or one year.   Therefore they are not temporarily there, but permanently for sale ; or, in other words, to remain there permanently until sold.   There seems to be no reason for holding that these cattle brought into the State by the appellants, residents of the State, for the purpose of supplying their trade, do not have for the purposes of taxation the same status as the goods of a merchant who buys in other States merchandise for the purpose of replenishing his stock—when here they may fairly be " considered as constituting a part of the mass of the property of the State."   *Appeal Tax Court* v. *Patterson*, 50 Md. 367.

It is said, however, that the assessment is bad, because it includes the cattle exported.   This class comprises two-thirds of the cattle handled.   It is well settled now by the decisions of the Supreme Court of the United States, that property in transit through the State, or from a point in the

State to a point outside, is not within the taxing power of the State.   That power lies with Congress, under that provision of the Federal Constitution, which declares that it shall have power " to regulate commerce with foreign nations, and among the several States and with Indian tribes," and it is exclusive in all matters which require or only admit of general and uniform rules. *Cooley* v. *Board of Wardens*, 12 How. 299 ; *Brown* v. *Maryland*, 12 Wheat. 419 ; *Walling* v. *People Michigan*, 116 U. S. 446.   But this provision does not prohibit a State from taxing articles brought from another State, so long as there is no discrimination against the product of other States or the rights of its citizens.   *Woodruff* v. *Parham*, 75 U. S. (8 Wall.) 123, 147 ; *Brown* v. *Houston*, 114 U. S. 622.   The mere fact, therefore, that these cattle were purchased in other States, and brought to this State, is *per ·se* no reason why they cannot be taxed, in the usual manner in which such property is taxed in the State, as a part of the general mass of the property of the State.   In *Coe* v. *Erroll*, 116 U. S. 517, the Supreme Court said, " They cannot be taxed as exports, that is to say, by reason. or because of their exportation, for that would amount to laying a duty on exports, and would be a plain infraction of the Constitution, which prohibits any State, without the consent of Congress, from laying any imposts or duties on imports or exports ; and although it has been decided that this clause relates to imports from and exports to foreign countries, yet when such imposts or duties are laid on imports or exports from one State to another, it cannot be doubted that such an imposition would be a regulation of commerce among the States, and therefore void as an invasion of the exclusive power of Congress  *  *  *  But if such goods are not taxed as exports, nor by reason of their exportation, or intended exportation, but are taxed as part of the general mass of property in the State, at the regular period of assessment for such property, and in the usual manner, they not being in course of transportation at the time, is there any valid reason why they should not be taxed ?" *State Freight Tax*, 15 Wall. 232.

We cannot hold in this case that at the period of assessment any of these cattle were in course of transportation. In the regular course of business the cattle purchased by the appellants are shipped to themselves at Baltimore, to be there disposed of as they may deem most advantageous to their own interests. Once at the Union Stock Yards the transportation ceased until at the pleasure of the appellants they are again shipped. They are not held there to await a steamer or a train, but for the convenience of the owners; in order that they may determine which of them they will sell in the home market and which they will ship to the foreign; or any other disposition they may choose. After this determination is reached some are disposed of at home to the butchers, and those destined for other markets are delivered to the carrier for their final journey.

Now it is proposed to tax them here, not because they come from another State, nor as exports; but in the same manner and for the same objects as all other property in the State is taxed. The case of the *State* v. *Engle*, 34 N. J. Law, 425, is not such a one as this. There the coal was mixed on their own land by a company in Pennsylvania and sent by rail to Elizabethport, to be there shipped by water to other markets for sale; the Court says, "The power of the State to tax the subjects of commerce, when their transit for the purposes of commerce has ceased, and they have become incorporated and mixed up with the property of the community is well settled. But that a tax on property belonging to a citizen of another State in its transit to market in another State, which is delayed within the State, not for the purposes of sale, but merely for separation and assortment for the convenience of shipment to its destination, is a tax on commerce among States, is too plain to require argument." In this case, the place of destination, upon their shipment from the west, is Baltimore County; and in the latter place the owners keep them until they shall have determined what disposition shall be made of them. The property then, not being in transit, either

through the State, or from a point in the State to a point outside, is "property within the State" within the meaning of the statute.

But it is contended, that even if this be true, the property is not properly taxed, because the appellants purchased the cattle with the intention to export them, and therefore to tax them while in Baltimore County, would be within the provision of the Constitution of the United States, prohibiting the State from laying imposts or duties on imports or exports. This question was raised in the Supreme Court, in the case of *Brown* v. *Houston*, 114 U. S. 622, but not decided. JUSTICE BRADLEY, speaking for the Court, said : "A duty on exports, must either be a duty levied on goods as a condition or by reason of their exportation, or at least a direct tax or duty on goods *which [are intended for exportation.* Whether the last would be a duty on exports is not necessary to determine." The subject came up again for consideration in the case of *Coe* v. *Erroll*, in 116 U. S. 517. The Court, after referring to what had been previously held, proceeded : " But no definite rule has been adopted with regard to the point of time at which the taxing power of a State ceases as to goods exported to a foreign country, or to another State. What we have already said  *  *  will indicate the view which seems to us the sound one on that subject ; namely, that such goods do not cease to be part of the general mass of the property in the State, subject, as such, to its jurisdiction and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation to another State or have started upon such transportation in a continuous route or journey.  *  *  Until actually launched on its way to another State, or committed to a common carrier for transportation to such State, its destination is not fixed and certain. It may be sold or otherwise disposed of within the State and never put in course of transportation out of the State."

This decision was based on the provisions relating to

commerce between the States.   But in *Turpin* v. *Burgess*, 117 U. S. 504, the Court declared the same rule applicable, where the goods are to be exported to foreign countries. They say : " A general tax laid on all property alike and not levied on goods in course of exportation, nor because of their intended exportation, is not within the constitutional prohibition."

In *Carrier* v. *Gordon*, 21 Ohio, 608, the rule is stated as follows : " To say that the simple purchase of the property, with an intention to remove it, would relieve it from liability to taxation, would be to make its liability depend upon the mere intention of the owner   *   *   *.   The safer rule is * * to consider property actually in transit as belonging to the place of its destination, and property not in transit, as property in the place of its situs, without regard to the intention of the owner, or his residence in or out of the State."

It is also objected that cattle sold on commission are included in this assessment.   The evidence does not support this contention.   It is true that Mr. Myers testified that one-sixth of the cattle sold by the appellants were commission cattle, but it does not appear that these were included in the assessment.   On the contrary, Myers, and also Houseman, expressly affirm that the statement which places their stock in trade—" capital stock "—at $20,000, is " a true return of all the property owned by them."   And no where in the record is there a word that tends to show that in making up the assessment the commission cattle were taken into account.   Myers testified that the valuation was of the capital stock or stock in trade.   Some criticism was made upon the words " capital stock " as not referring to the amount of stock kept on hand.   As used here, we think the words " capital stock " are intended to refer to the stock of the concern, and not its money.   *Corson* v. *State*, 57 Md. 266.

There is, however, a fatal omission in the method by which this assessment was made.   We do not think it can

be regarded as a transfer from the tax-books of Baltimore City.   It was a new assessment, so far as it affected the taxable basis of Baltimore County, and was therefore within the provisions of sec. 145 of Article 81 of the Code.   By that section, where new property not valued and returned by the proper assessor or collector is to be added, the County Commissioners must first notify the owner by " *written* or printed summons," containing interrogatories, etc., and appointing " a certain day " for him to appear and answer ; and, secondly, such notice is to be served at least five days before the day of hearing.

On that day the owner may appear and answer and present such testimony as he desires or the Commissioners deem necessary to be heard.

It is only after the owner has been thus summoned, and has failed to answer in writing on oath, or has appeared and answered orally and the return day has passed, that the County Commissioners can add such new property.   The section excepts from these provisions such assessments as are made by the proper collector or assessor, whose duty it is to assess and return the same ; but this exception does not apply in this case, inasmuch as VanMeeter was merely an agent, with no power to do more than report newly-discovered and mixed properties to the Commissioners.

In this case a memorandum was made by this agent and the entry of this upon the tax-books by the direction of the County Commissioners constituted the only assessment. This Court has said :   " Until the property owner is duly notified and given an opportunity to come in and answer as to the vualation of the property proposed to be affected, or had failed to come in after receiving such notice, the Commissioners have no authority or power either to increase the valuation of property already valued and assessed or to add thereto other property not valued and returned to them by the proper assessors or collectors, as provided in the statute. The statute law of the State applicable to the case," the Court proceeds to say, " should have been complied with,

and the notice given as required." *County Commiss. of Allegany Co.* v. *New York Mining Co.*, 76 Md. 557. This notice not having been given as required by the statute, this assessment cannot be upheld.

*Decree reversed and the cause remanded.*

(Decided June 17th, 1896).