COSIER ET AL., APPELLANTS, *v*. McMILLAN, COUNTY
TREASURER, RESPONDENT.

[No. 1,073.]

[Submitted April 5, 1899. Decided April 26, 1899.]

*Taxation—Indian Reservation—Indian Post Trader—Exemption—Board of Equalization—Irregularity of Assessment—Waiver.*

1. Indian reservations are not without the jurisdiction of the State for the purposes of taxing personal property, in which the Indians are not interested, held upon such reservations.
2. The fact that an Indian post trader is licensed by the government to trade with Indians does not exempt his stock in trade from state and county taxation, such trader being a mere licensee, and not an agent, of the government.
3. Irregularity of a board of equalization in placing a value on a taxpayer's property, instead of requiring the assessor to do so, was waived by the taxpayer, who, with notice thereof, and in response to the notice, appeared before the board to request it to strike the assessment because the property was not subject to taxation, no objection being made to the irregularity, nor to the valuation adopted.

*Appeal from District Court, Valley County; Dudley Du Bose, Judge.*

SUIT by H. M. Cosier and Annie Shaw, co-partners, doing business under the firm name and style of H. M. Cosier & Co., against A. J. McMillan, as county treasurer of Valley county. There was a decree for defendant, and plaintiff's appeal. Affirmed.

Statement of the case by the Justice delivering the opinion.

Action to restrain the defendant county treasurer of Valley county from collecting taxes on property situated on the Fort Peck Indian reservation, Montana, and used as the stock in trade of the duly-licensed Indian post trader at that place. H. M. Cosier was the duly-licensed military post trader at Fort Peck, and W. B. Shaw was the duly-licensed Indian post trader at the Fort Peck Indian reservation at Poplar River, Montana. The stock of goods used by each of these

parties, respectively, as such trader, was owned by these plaintiffs. In 1893 the assessor of Valley county listed for taxation certain property belonging to the plaintiffs, but did not include either of the stocks of goods used by said traders. No change was made in that assessment list by the assessor, and he never listed the goods for taxation until the board of equalization for Valley county met. At the meeting of that board, held on July 17, 1893, the following resolution was adopted: "On motion the assessment of H. M. Cosier & Co., of Poplar River, was raised on merchandise in store on military reservation from nothing to five thousand dollars, and, on motion, the same action was taken as to their store on the Indian reservation at Poplar River." Thereupon the property was, by the order of the board of equalization, placed on the assessment roll for taxation. On August 7, 1893, W. B. Shaw, as agent for the plaintiffs, appeared before the board of equalization, and filed an application, supported by affidavit, to strike from the assessment roll the stocks of merchandise so listed for taxation. This application was refused. Plaintiffs offered to pay the taxes on the horses and cattle which were listed for taxation as their property, but the county treasurer refused to receive or accept it, or give a receipt therefor, unless they would pay all taxes assessed against them, including the taxes on these stocks of goods. Thereupon this action was commenced. The trial court held that a stock of goods used by an Indian trader was and is subject to taxation, and gave judgment accordingly. Plaintiffs appeal.

*Cullen & Toole* and *Walsh & Newman*, for Appellants.

The appointment of a post trader on an Indian reservation is a part of the policy of the nation in dealing with the Indians and other persons upon the reservation, and the presence of such person with his stock of goods, wares and merchandise is for the interest of the tribe of Indians upon that reservation, and enables the government to carry out its treaty with the Indians, and is expressly authorized by law. (Rev. Stat. U. S., Secs. 2128, 2129, 2131; *Adams* v. *Freeman*, 60

Pac. 135.) If taxation is allowed, it may be exercised to such an extent as to become so burdensome and oppressive as to contravene the policy of the government and bring about a conflict in the authorities between the State and Federal Government. In this respect the case is analogous to taxing national banks, whose charters are granted by acts of Congress and the taxation of which is prohibited upon similar grounds. If the State can tax the goods, wares and merchandise of such post traders, it can also require a license to do business, and a case might arise out of conflicting authority which would prohibit the exercise and practice of the policy of the government in establishing these post traders upon Indian reservations, and would disable the government and prevent it from carrying out its treaties with the Indians. The right to regulate commerce with the Indians is reposed in Congress, and Congress, by reserving exclusive jurisdiction over these lands in the act of admission, and providing for the appointment of Indian traders, continues to regulate commerce with these Indians as it has always done, and the Constitution of the United States and the laws made in pursuance thereof, being supreme over the several states, the power of regulation cannot be interfered with, limited or restrained by any exercise of state authority. When, therefore, it is held that the power to tax is at the discretion of the authority which wields a power which may be carried to the extent of annihilation of that which it taxes, and therefore may defeat and nullify any authority which may elsewhere exist for the purpose of protection and preservation, it follows as a corollary that the several states cannot tax the commerce which is regulated under the acts of Congress. (Cooley on Taxation, p. 62; *McCullough* v. *Maryland*, 4 Wheat. 316-425; see, also, *Weston et al.* v. *City of Charlestown*, 2 Pet. 449; *Osborn et al.* v. *Bank of the United States*, 9 Wheat. 738; Cooley on Taxation (2d Ed.) 83; Desty on Taxation, Vol. I, p. 75.)

There is a broad distinction between cases where the property is that of an Indian post trader upon an Indian reservation, who is upon that reservation under a license from the

general government and as its agent is carrying out the provisions of its treaty with the Indians, and where property is upon a reservation for other purposes. In all cases where this question has been presented to the courts, it has been invariably held that such property is not subject to taxation. (*Foster* v. *Commissioners of Blue Earth Co.*, 7 Minn. 84; *Fremont Co.* v. *Moore*, 19 Pac. 438.) The opinion of the Attorney General of the United States on this question is entitled to great weight .by this Court. We respectfully invite the attention of the Court to the opinion of Attorney General Wirt, 1 Opinions Attorney General, p. 645. See, also, Opinions of Attorney General, 19 Opinions, 161. Also, Opinion of Attorney General rendered April 29, 1893. We have been unable to procure the citation to that opinion. We also invite the attention of the Court to the opinion of the Commissioner of Indians as set forth in the following letters:

'M
6826-1897.

DEPARTMENT OF THE INTERIOR,
U. S. Indian Service,
Office of Indian Affairs,
WASHINGTON, Feb. 27th, 1897.

CAPT. H. W. SPROLE,
     *Acting Indian Agent,*
          *Fort Peck Agency, Montana.*

"Land.
13455-1895.

DEPARTMENT OF THE INTERIOR,
Office of Indian Affairs,
WASHINGTON, Aug. 13th, 1895.

CAPT. FRANK D. BALDWIN, U. S. A.,
     *Acting Agent Kiowa, Etc., Agency,*
          *Anadarke, Oklahoma Territory.*

The fact that the property in question was owned not by the Indian trader, but by the plaintiffs in this action, does not change the rule. The exemption from taxation is not a personal privilege. It is the property that is exempt. The Indian post trader being duly licensed to trade on the reservation, could make any arrangement he wished with reference

to procuring his stock of goods to enable him to carry on the business of Indian post trader. (*Dunn* v. *Carter*, 1 Pac. 66.) We respectfully submit that the property of an Indian post trader is not subject to taxation.

*C. B. Nolan, Attorney General*, for Respondent.

**HUNT, J.**—1. Although the people of the state of Montana agreed, as a condition to the admission of the state into the Union, to disclaim any right or title to all lands lying within the limits of the state owned or held by any Indian tribes, and that until title thereto shall be extinguished by the United States the same shall be and remain subject to the disposition of the United States, and under the absolute jurisdiction and control of Congress, still Indian reservations are not without the jurisdiction of the State for the purposes of taxing personal property, in which the Indians are not interested, held upon such reservations. In *Truscott* v. *Hurlbut Land & Cattle Co.*, 19 C. C. A. 374, 73 Fed. 60, the United States Circuit Court of Appeals said, in reference to taxing cattle upon an Indian reservation: "We are unable to see any good reason why the authority of the state and its subordinate subdivisions, the counties, may not also include the taxation of all such personal property found within their geographical limits, although upon the reservation in question, provided, as in this case, the Indians are in no way interested in it."

Appellants, however, would have the courts except their property from the operation of the taxing power of the state because it constitutes the stock in trade of an Indian post trader, and is used in trading with the Indians under a license obtained from the government of the United States; or, in other words, appellants contend that the presence of an Indian trader with a stock of goods on an Indian reservation is an agency of the general government to carry out its treaty with the Indians, and is expressly authorized by law. We cannot concur in this argument. There was a time when the government furnished the merchandise traded to the Indians, and when the person who dealt out the property so furnished

acted as an agent of the United States, which made the commerce so conducted with the Indians an agency of the government. But long ago (in 1834) that policy was changed, and now any loyal citizen is authorized to trade with an Indian tribe upon giving a bond conditioned to faithfully observe all laws and regulations made for the government of trade and intercourse with the Indian tribes. (Rev. St. U. S. Sec. 2128 *et seq.*) So that at present an Indian post trader is a licensee with authority to trade with the Indians, required, of course, to observe the laws and regulations appertaining to such intercourse,—a privileged trader on his own account, responsible to no one except for the observance of the aforesaid laws and regulations and for violation of the same. His real connection with the government seems to be that he is privileged, upon conditions and under regulations, to go onto the reservation to seek as customers the wards of the United States living upon the Indian reservation, permission to trade with whom upon their reservation can only be obtained from the guardian government, which reserves the right to revoke the license or terminate the privileges at its pleasure. (*Id.* Sec. 2131.) We are unable to see how such a relationship between a citizen and the general government makes the citizen enjoying the privilege an agent of the United States, or how his goods, in which neither the government nor the Indians have any interest, are a federal agency or means employed by the government for the execution of its powers, the taxation of which by the state is forbidden by implications of the Constitution of the United States; provided there is no unjust discrimination between the property of the citizen situate upon the reservation and other like kinds taxed by the state. (*Thompson* v. *Railroad Co.*, 9 Wall. 579; *Railroad Co.* v. *Peniston*, 18 Wall. 5; *Central Pac. R. Co.* v. *California*, 162 U. S. 91, 16 Sup. Ct. 766; *Moore* v. *Beason* (Wyo.) 51 Pac. 875; *Thomas* v. *Gay*, 169 U. S. 264, 18 Sup. Ct. 340; *Wagoner* v. *Evans*, 170 U. S. 588, 18 Sup. Ct. 730.)

2.   It is also said that the tax cannot be collected in this instance because the levy was not made in the manner pro-

vided by law.    It appears that the assessor, prior to the meet-
ing of the county board of equalization, made no assessment
upon the stock of goods of H. M. Cosier & Co. for 1893,
though he did make assessments to the value of $2,900 upon
other property owned by the firm.    Afterwards, at a meeting
of the board of equalization of Valley county, held on July
17, 1893, the entry was made as quoted in the statement pre-
ceding this opinion.    The assessor testified on the trial that he
made the changes in the assessment so as to include the mer-
chandise involved by order of the board of equalization, and
that the total assessment as equalized against Cosier & Co. for
1893 was $12,900.    The record also shows that on August 7,
1893, at a meeting of the said board of equalization, plaintiffs,
by W. B. Shaw, as agent, appeared before the board and re-
quested that said assessment be stricken off the lists upon the
ground that the property was not subject to taxation, which
application was denied by the board.

The action of the board of commissioners, sitting as a board
of equalization, in placing a value upon the property in the
manner it did, and in causing the entry quoted to be spread
upon its minutes of July 17th, was irregular in fact and in
form.    The function of a county board of equalization is to
require the assessor to assess taxable property which has es-
caped taxation, and to direct that official to make the proper
entry upon the assessment book.    The board itself should not
make the assessment, its power being to equalize after an as-
sessment has been made as directed by the assessor.    (Session
Laws of 1891, p. 99, Secs. 68, 69; Political Code of 1895,
Secs. 3788, 3789.)    But, unless this irregularity rendered the
tax void, or substantially prejudiced plaintiff's rights, the case
should not be reversed.    The assessment book was put in evi-
dence on the trial.    It showed an entry by the assessor of the
plaintiff's stock of merchandise, with the valuation placed
thereon by the board.    Plaintiffs had been duly notified (un-
der section 69) of the action of the board of equalization in
putting a valuation of $5,000 on their stock of merchandise
owned by them as Indian traders, and in response to this no-

tice appeared before said board, not objecting in any way to· the irregularities of procedure in listing their property, not claiming they did not own the property so assessed, not objecting to the valuation adopted by the board and entered on the assessment book by the assessor, but only to request the board to strike from the lists the assessment of their merchandise used in Indian trading, on the sole ground that such property was not subject to taxation at all under the laws of the state. We cannot escape the conclusion that by the conduct of the plaintiffs they intended to disregard any irregularities of the board of equalization or of the assessor in the· assessment of their stock in trade, and to stand upon the single· broad ground that the stock in trade of an Indian post trader· lawfully trading on an Indian reservation is an agency of the United States, exempt from taxation by the state and any local subdivision thereof. There was no showing of prejudice to the plaintiff's rights by error in the assessment by the board and assessor. It seems but just, therefore, that they should not be allowed to restrain the collection of the taxes for the· mere irregularity referred to. (Cooley on Taxation, 2d Ed., p. 775.)

We find no error in the case. Judgment affirmed.

*Affirmed.*

Brantly, C. J., and Pigott, J., concur.

