# WESTERN RANCHES, LIMITED, APPELLANT, v. COUNTY OF CUSTER, RESPONDENT.

### (No. 1,577.)

Submitted May 15, 1903.   Decided June 1, 1903.)

*Taxation—Board of Equalization—Increase in Assessment— Necessity of Notice—Waiver—Property Not Owned by Tax- payer — Action for Restitution — Propriety of Remedy— Constitutionality of Statute—Sufficiency of Title.*

1   Under Political Code, Section 3789, providing that persons interested must be notified by letter, at least ten days before action is taken, of the day when an increase in a tax assessment will be considered by the board of county commissioners sitting as a board of equalization, the ten-day notice is jurisdictional.

2.   Failure to give a taxpayer the ten-day notice of a proposed increase in his assessment, required by Political Code, Section 3789, is not waived by his subsequently appearing and securing a reduction of the increased assessment.

3.   A tax cannot be lawfully levied against a person for property which he does not own.

4.   Political Code, Section 4023, authorizes an injunction to restrain the collection of an illegal or unauthorized tax.   Section 4024 provides that in all cases "of levy of taxes," etc., deemed unlawful by the property owner, he may, under protest, pay such tax, and thereupon sue to recover it.   Section 4026 provides that this remedy shall supersede injunction and all other remedies which might be invoked to prevent the collection of taxes alleged to be irregularly "levied or demanded," etc.   *Held*, that Section 4024, being construed with Section 4026, is not restricted to cases in which the levy is assailed as unlawful, but suit thereunder might be brought where an assessment was void, notwithstanding Section 4023.

5.   Under Political Code, Section 5185, providing that if any of the acts enumerated in such Code are inconsistent with any acts passed by the Fourth legislative assembly the latter shall control, Sections 4024 and 4026, providing a special remedy by suit for the recovery of illegal taxes, being part of the special act approved March 18, 1895, will control, in case of conflict, Section 4023, authorizing injunction; the latter section having been recommended by the code commission.

6   An increase in an assessment by the assessor in obedience to a void order of the board of equalization cannot be justified under Political Code, Sections 3701, 4014, under which the assessor may assess at any time property which has escaped taxation.

7.   Political Code, Sections 4024-4026, providing a remedy by action for the recovery of illegal taxes, were contained in an act approved March 18, 1895, and entitled "An Act providing for unlawful levy and collection of public revenue."   Constitution, Article V, Section 23, requires the subject-matter of acts to be clearly expressed in their titles."   *Held*, that the act of March 18, 1895, was not unconstitutional, the words "providing for unlawful levy," etc., being construed as meaning "providing a remedy for unlawful levy," etc.

*Appeal from District Court, Custer County; C. H. Loud, Judge.*

ACTION by the Western Ranches, Limited, against the County of Custer. From a judgment for defendant, entered on sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

### STATEMENT OF THE CASE BY THE COMMISSIONER PREPARING THE OPINION.

This action was commenced by plaintiff to recover of the defendant the sum of $975.63 for taxes paid under protest. After stating the corporate existence of plaintiff and defendant, it is alleged in the amended complaint that the only property the plaintiff owned, claimed, controlled, managed, or possessed at 12 o'clock m. on the first Monday of March, 1896, or at any other time during said year, which was situated in the county of Custer or elsewhere in the state of Montana, consisted of 200 head of horses and 1,000 head of stock cattle; that said cattle, on the 1st day of March, and at all times during the said year, were not worth or of a cash value to exceed $17 per head, and that during all such time the horses were not worth or of a cash value to exceed $15 per head; that between the first Monday of March, 1896, and the second Monday in July, 1896, the assessor assessed to the plaintiff 1,000 head of stock cattle at a valuation of $17 per head, but that the commissioners of Custer county, sitting as a board of equalization, on the 20th day of July, 1896, "without notifying this plaintiff, and without this plaintiff being present or having any knowledge thereof, and without giving this plaintiff an opportunity to be heard, and without jurisdiction, or right, or authority so to do, and without any investigation or hearing any evidence as to the property of plaintiff, determined that the assessment to this plaintiff of 1,000 head of stock cattle as aforesaid was incorrect and incomplete, and thereupon increased said assessment, and directed

the said assessor to assess to this plaintiff, in addition to the assessment theretofore made, 300 head of beef cattle at a valuation of $25 per head; 4,000 head of stock cattle at a valuation of $17 per head; 300 saddle and work horses at a valuation of $20 per head; ranch improvements at a valuation of $100; wagons and harness at a valuation of $150; making a total of $149.350, which, together with the previous assessment, made a total of $166,350, which assessment the assessor thereupon made pursuant to and in accordance with said direction."

On the 6th day of August, 1896, the plaintiff appeared before the board of equalization, and made written application for a reduction of the amount of property assessed, and for a reduction of the valuation placed upon the horses, but the board refused to reduce or correct the assessment, except to the extent of changing and reducing the number of head of stock cattle to 2,750, and the number of beef cattle to 1,000, and the number of saddle horses to 200, but entirely abated and canceled the assessment on account of ranch improvements, wagons and harness. For the purpose of preventing the seizure and sale of plaintiff's property, plaintiff, to satisfy the tax which it claimed was illegal, upon the demand of the treasurer of the county, paid the same under written protest upon the 7th day of December, 1896, to the extent of $1,325.63, but, claiming at the time that the sum of $975.63 was an invalid and illegal tax, notified the treasurer that it would institute an action against the county to recover the latter sum, with interset thereon, and costs.

The defendant demurred to this complaint on the ground that it does not state facts sufficient to constitute a cause of action. This demurrer was sustained, and judgment entered thereon dismissing the complaint, and for costs, from which plaintiff appeals.

*Mr. C. R. Middleton,* and *Mr. M. S. Gunn,* for Appellant.

*Mr. James Donovan,* for Respondent.

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

1.   In causing plaintiff's assessment to be increased, the board of county commissioners, sitting as a board of equalization, assumed to act under Section 3789 of the Political Code, which reads as follows: "During the session of the board of county commissioners it may direct the assessor to assess any taxable property that has escaped assessment, or to add to the amount, number or quantity of property when a false or incomplete list has been rendered, and to make and enter new assessments (at the same time canceling previous entries) when any assessment made by him is deemed by the board so incomplete as to render doubtful the collection of the tax; but the clerk must notify all persons interested, by letter deposited in the postoffice, postpaid, and addressed to the person interested, at least ten days before action is taken, of the day fixed when the matter will be investigated."

It is patent that the board had no jurisdiction to increase the plaintiff's assessment without first giving the ten-days' notice provided by statute.   In *Western Ranches* v. *Custer County* (C. C.), 89 Fed. 577, Judge Knowles, in passing upon the above-quoted section, said: "Did the failure to give the notice before the listing of the property invalidate the tax? I think it did.   The notice required by this section was for the protection of the taxpayer, and intended to give him a hearing before the listing of his property in a supplemental list, and was jurisdictional.   Without such notice the board of equalization has no right to order the assessor to make the supplemental list. (Cooley, Tax'n (2d Ed.), 362-366; *French* v. *Edwards,* 13 Wall. 506, 20 L. Ed. 702; *Powder River Cattle Co.* v. *Board of Commissioners of Custer Co.* (C. C.), 45 Fed. 323; *Dykes* v. *Mortgage Co.,* 2 Kan. App. 217, 43 Pac. 268.)"   And see *Commissioners* v. *New York Mining Co.,* 76 Md. 549, 25 Atl. 864; *Myers* v. *Baltimore County,* 83 Md. 385, 35 Atl. 144, 34 L. R. A. 309, 55 Am. St. Rep. 349; *Commissioners* v. *Lang,* 8 Kan. 284; *Topeka Water Supply Co.* v. *Roberts,* 45 Kan. 363, 25 Pac. 855.

The failure to give plaintiff the required notice having ren-

dered the tax illegal because the board had acquired no jurisdiction to act with reference thereto, the fact that the plaintiff voluntarily appeared on August 8th, and asked a reduction of its assessment, which was partially granted, did not obviate or waive the want of jurisdiction in the board's original action. This question was not raised in *Cosier* v. *McMillan,* 22 Mont. 484, 56 Pac. 965, cited by defendant. Plaintiff was seeking a reduction of its assessment, and therefore properly appeared before the board to ask the same. (*Barrett* v. *Shannon,* 19 Mont. 397, 48 Pac. 746.)

But, without reference to the illegal action of the board, it appears from the complaint that the plaintiff was assessed for a large amount of property of which it was not the owner. It is fundamental that a tax cannot be lawfully levied against a person for property which he does not own.

2. The defendant contends, however, that Section 4024, Political Code, which provides that "in all cases of levy of taxes, licenses or other demands for public revenue, which is deemed unlawful by the party whose property is thus taxed or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in any court of competent jurisdiction against the officer to whom said tax or license was paid or against the county or municipality on whose behalf the same was collected, to recover such tax or license or pay any portion thereof paid under protest"—applies only to cases in which the *levy* of taxes is deemed unlawful, and does not apply to cases where the *tax* or the collection of it is complained of. It is argued that, where the tax is illegal, or is not authorized by law, the collection of it must be restrained under the provisions of Section 4023, or else must be recovered after a payment made under duress.

We do not think this argument is sound. This section must be read together with Section 4026, which is as follows: "The

remedy thereby [hereby] provided shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded except in unusual cases where the remedy hereby provided is deemed by the court to be inadequate." The words "levy of taxes, licenses or other demands for public revenue" in Section 4024 are to be construed with the words "levied or demanded" in Section 4026. Section 4023 was recommended by the code commission, and adopted as part of the Political Code. Sections 4024 and 4026 were part of a special Act, which was approved March 18, 1895, and, if there be any conflict between Section 4023 and Sections 4024 and 4026, the latter sections control. (Section 5185, Political Code.) Speaking of Sections 4024 and 4026, *supra,* Judge Knowles said: "These sections provide a remedy for the collection of money paid for or on account of an illegal tax to the treasurer or tax collector of any county or municipality of this state. * * * This is a special statute, and is intended to give an exclusive remedy, except in unusual cases, where there is a dispute as to the legality of the tax between a taxpayer and a county or municipality. (End. Inter. St. Sec. 154.) When a special and exclusive remedy is given by a statute, we look alone to it, and are required to follow it." (*Western Ranches* v *Custer County, supra.*) This is in accordance with our views, and we think the plaintiff pursued the proper remedy in paying the taxes demanded under protest, and afterwards bringing suit to recover them.

3. It is insisted by the defendant that under Sections 3701 and 4014 of the Political Code the assessor may assess property which has escaped taxation at any time, and therefore the assessment levied upon plaintiff's property can be sustained under such sections. But this position is not maintainable for the reason that the record shows the action of the assessor to have been based upon the order of the board of equalization; and further shows that the property sought to be assessed did not escape

taxation for the reason that, in so far as the plaintiff is concerned, it was not in existence.

4.    Defendant further contends that Sections 4024, 4025, and 4026 are unconstitutional. These sections were enacted in the form of Senate Bill No. 69, which was approved March 18, 1895, and was entitled "An Act providing for unlawful levy and collection of public revenue." It is argued that this title does not comply with Section 23 of Article V of the Constitution, which provides: "No bill, except general appropriation bills and bills for the codification and general revision of the laws shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." The purpose of this section was to prevent surprise and fraud in legislation, and generally to inform every one of the subject under consideration. This court, speaking through Mr. Justice Milburn, in *State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308, held that this section should receive a liberal construction, and the general rule is that "courts will not pronounce a statute unconstitutional unless it is clearly so, and both the statutes and the constitutional provisions with which they are claimed to be in conflict will be liberally construed with a view to sustaining legislative action." See note to *Crookston* v. *County Commissioners,* 79 Am. St. Rep. 453, and cases cited (s. c. 79 Minn. 283, 82 N. W. 586). "If the title of an Act is single, and directs the mind to the subject of the law in a way calculated to direct the attention truly to the matter which is proposed to be legislated upon, the object of the provision is satisfied." (*Mobile Transportation Co.* v. *City of Mobile,* 128 Ala. 335, 30 South. 645, 86 Am. St. Rep. 143.)

Testing the Act in question by these rules, it is manifest that the legislature enacted a law concerning the unlawful levy and collection of public revenue. The subjects included in the bill are all germane to the unlawful levy and collection of public revenue. Neither the legislature nor the public could have been

misled by the title of the Act. Any other interpretation of the language employed would be absurd. The author of the bill did not happily frame its title. Probably he intended to say, "An Act providing a remedy for the unlawful levy and collection of public revenue," but, aside from conjecture, he did express this meaning in the title of the bill. By reference to the Century Dictionary, the word "provide" will be found to be defined as follows: "To take measures for counteracting or escaping something; often followed by 'against' or 'for;'" and the word "for" as follows: "In relation to; with respect or regard to; as affects or concerns; as regards." Therefore the title in controversy clearly reads, "An Act providing with respect to [or as concerns] unlawful levy and collection of public revenue," and easily comes within the intent and meaning of the constitutional provision.

It thus appears that the action of the board of county commissioners in raising the assessment upon plaintiff's property was illegal for two reasons: first, that it had no jurisdiction to act without first giving the ten days' notice provided by law; and, second, that it assumed to assess property which the plaintiff did not own. The plaintiff, having paid its tax under protest, agreeably to the provisions of the sections *supra,* and having thereafter brought this suit, is entitled to recover upon the showing made by the complaint.

In our opinion, the judgment should be reversed, and the cause remanded, with directions to overrule the demurrer.

Per Curiam.—For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with directions to overrule the demurrer.

Mr. Justice Milburn, being disqualified in this case, takes no part in this decision.