POWDER RIVER CATTLE CO. *v.* BOARD OF COMMISSIONERS OF CUSTER COUNTY.

(*Circuit Court, D. Montana.* January 15, 1891.)

1. TAXATION—ASSESSMENT—DEMANDING TAX-LIST.
   Under Rev. St. Mont. 1879, div. 5, § 1011, providing that the assessor shall demand of "each tax-payer in the district" a list of his personal property, and, on his refusing to give it, the assessor shall list his property on information and belief, adding a penalty, the assessor has no jurisdiction to make an assessment without first demanding a list of the tax-payer or his agent, where, though not a resident of the county, the tax-payer has resident agents in charge of the property therein, and his address is known to the assessor.

2. SAME—ACTION BY EQUALIZING BOARD.
   The county commissioners, acting as a board of equalization, cannot, in the absence of any statute authorizing it, assess property not listed and valued by the assessor.

3. SAME—RECOVERY OF ILLEGAL TAXES PAID.
   Where, without demanding a list from the tax-payer, the assessor lists against him property which he owns and property which he does not own, and the county commissioners add other property which he does not own, the tax-payer may recover the illegal taxes paid under compulsion, and he is not required to apply to the board of equalization for an abatement.

4. SAME.
   Illegal taxes on personal property having been paid under protest to avoid a threatened levy of a warrant, the tax-payer may recover the amount paid from the county which receives and holds the taxes.

At Law. On demurrer to complaint.

*M. J. Liddell*, for plaintiff.

*W. H. Ross* and *Strevell & Porter*, for defendant.

KNOWLES, J. This is an action brought to recover from Custer county a tax claimed to have been illegally collected from plaintiff, amounting to the sum of $3,485.40, with legal interest thereon from the 14th day of June, 1886, the date said collection was made. Plaintiff sets forth in its complaint that it is a corporation organized under the laws of the kingdom of Great Britain and Ireland, and doing business in the states of Wisconsin and Wyoming, in raising, breeding, buying, and selling cattle and horses. That defendant is a public corporation, existing by virtue of the laws of formerly the territory, now the state, of Montana. That among the possessions of plaintiff in 1885 were some 4,000 head of castle, ranging at a place called "Hanging Woman's Creek," in said Custer county. That said place was in said Custer county was a fact of which plaintiff was ignorant. That the assessor of said Custer county well knew the residence of the officers of plaintiff, and where those who had a right to list its said property lived. That its principal place of business was at Cheyenne, in the now state of Wyoming, and at its ranch on said Hanging Woman's creek, in the now state of Montana. That the said assessor of said Custer county made no demand on plaintiff or any of its agents, servants, or employes to list said cattle. That the said assessor well knew the post-office address of said agents, servants, and employes of plaintiff. That the said assessor, without making said demand on plaintiff, or any of its agents, servants, or employes to list said property, listed himself the same upon information and belief, and in such listing increased the amount from 4,000 cattle to 10,000, an excess of 6,000 over the amount plaintiff had in said Custer county. That in said list were included calves under one year old, and bulls, not taxed. That subsequently the county commissioners added to said list of property of plaintiff a certain number of horses, which it valued at $2,000, and that they did this without any notice to plaintiff. That the said tax so levied upon the property so listed was turned over to the treasurer of said Custer county, with a warrant for its collection. That the said treasurer, acting as collector of taxes, threatened to, and did attempt, during the month of May, 1866, to seize the property of plaintiff, namely, its cattle, for the purpose of selling the same to pay said taxes, and that the said treasurer was only prevented from so doing by plaintiff paying to said treasurer the amount of $4,954, claimed as taxes, and $495.40 as a penalty added thereto for not paying said taxes within the time provided by law. That the said sums were so paid by plaintiff under duress of its property, and to save the same from seizure and sacrifice, and under protest, alleging that said tax was void; that the assessor had no jurisdiction to list said property, by reason of the fact that he had made no demand upon the company or its officers or agents for a list of its property; and for the reason that said assessment list and roll contained no description of plaintiff's property subject to taxation

in said Custer county, and no valuation of the same, as required by law, and that the action of the board of county commissioners in listing and valuing plaintiff's horses for taxation was without authority of law, and notifying defendant that plaintiff would resort to appropriate remedies at law to recover the money so paid back. The defendant filed its demurrer to this complaint, and the questions presented for consideration arise in considering the same. The facts stated in the complaint must be considered as true.

The first point that arises is, was the tax illegally assessed? The statute requires that every assessor shall demand of each tax-payer in his district a list of his property. At the date of the assessment in this case the district of the assessor of Custer county embraced the whole of that county. It is a general rule of the United States courts that they will follow that construction of a state statute which it has received by the highest court of that state. *Moores* v. *Bank*, 104 U. S. 625; *Fairfield* v. *Gallatin Co.*, 100 U. S. 47; *Tioga R. Co.* v. *Blossburg & C. R. Co.*, 20 Wall. 137; *King* v. *Wilson*, 1 Dill. 556. The supreme court of Montana Territory in the case of *Railroad Co.* v. *Carland*, 5 Mont. 146, 3 Pac. Rep. 134, interpreted the statute under consideration requiring a demand to be made by the assessor upon the tax-payer to list his property subject to taxation. In speaking of that statute, it says, by Chief Justice WADE:

"Under the provisions of our statute it is the first duty of the assessor to demand a list of the property from the tax-payer or the person whose property is to be assessed. This is the first and important step towards assessing his property for taxation. If the list is not furnished on such demand, then, and not until then, has the assessor the right himself to make a list and value the property. The demand is a condition precedent to the right of the assessor to act in the premises. That, and the neglect or refusal of the person having taxable property, alone gives to the assessor the right to make the list himself. If this were not so, the sovereign power of taxation becomes an arbitrary exaction, subject to the caprices of a single individual, without the knowledge and behind the back of the person most interested, and whose property is to be taken for the public use. Therefore it is that our statute has wisely provided that the person having taxable property shall have the right to list the same for taxation. The assessor has no right or jurisdiction to make the list until the tax-payer or person having the property subject to taxation has neglected or refused to make it."

This decision very fully and decisively determined the question that there must be a demand on the tax-payer or person in charge of taxable property for a list of the property possessed by him and a refusal to list the same, before the assessor has any jurisdiction to list such property himself. It is true this was a decision of a territorial court. But the same reason for the rule in relation to the decisions of state courts should prevail. It was a territorial court interpreting a statute of its territory, which became a rule for the conduct of revenue officers of the territory in prosecuting their official duties. If it is not of controlling authority the rule expressed in that decision should, I am of the opinion, commend itself to the judicial mind. As to statutes providing for taxing property, it may be said as a general rule: "When the regulations pre-

scribed are intended for the protection of the citizen and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be, injuriously affected, they are not directory, but mandatory." *French* v. *Edwards*, 13 Wall. 506. The failure to make a demand of a tax-payer for his list of property might, and generally would, injuriously affect his rights; for, if the tax-payer must list his property, whether any demand for the same is made upon him or not, then the assessor may, on mere information and belief, list his property, and add 20 per cent. to the value thereof. Information and belief is a very poor guide in arriving at one's property. Certainly, the law that requires a demand to be made of the tax-payer for his list of property is intended for his protection. It is therefore a mandatory statute. It is urged, however, that this demand should be made only of tax-payers who reside in the district of the assessor. The statute does not say so. The language of the statute is: "Between the first day of February and the tenth day of September in each year [referring to the assessor] he shall demand of each tax-payer in his district a list, as hereinafter provided, of his, her, or their property." Section 1011, div. 5, Rev. St. Mont. 1879. In interpreting a statute the whole statute should be construed together. End. Interp. St. § 35. In section 1004, div. 5, of said Revised Statutes it provides "that every inhabitant of the territory of full age and sound mind shall list all property subject to taxation in this territory of which he is the owner or has the control or management." Again, "all personal property shall be listed, assessed, and taxed in the county where the same may be found." Section 1005, Id. Again, "all persons required to list property in behalf of another, shall list in the same county in which he would be required if it were his own." Section 1006, Id. As every one is required to list the property he owns or has control or management of in the county where the same may be found, it cannot reasonably be contended that only the tax-payers who reside in the district of the assessor should receive a demand to list their property. Statutes should, if possible, be so interpreted as to make the intent of the legislative power reasonable. End. Interp. St. § 245. If it is only those who live in the same district as the assessor that are entitled to receive a demand for a list of taxable property, then it is only the property of those who live in the district of the assessor who are liable to have their property listed by the assessor upon a refusal or neglect to list after a demand and 20 per cent. penalty added to the value thereof. For we have seen that it is after a demand that the assessor has the jurisdiction to list taxable property. If it is only of those who live in the district of the assessor who are to receive a demand for a list of their taxable property, how can the property of a tax-payer who does not live in an assessor's district be listed if he refuses or neglects to list the same, and what penalty is to be inflicted on him for his refusal or neglect to list his property? I think it appears evident that the legislature did not intend that the demand should be made only of the tax-payers who reside in the district of the assessor, and the words of the statute are that the demand should be made of every tax-payer in his (the assessor's)

district. The plaintiff, being a tax-payer in the district of the assessor of Custer county, should have received in some way a demand of the plaintiff or its agents or employes having control or the management of its property in that county for a list of its taxable property found therein, or show some reasonable excuse for not making the demand. This was mandatory, and his failure to do so rendered the listing of the property of plaintiff by the assessor illegal and void. The county commissioners of Custer county had no right to list the horses of plaintiff without some statutory authority. I have been unable to find any such authority. The listing of said horses was therefore illegal. *People* v. *Reynolds*, 28 Cal. 108. That board could not list, or, in the first place, before any action of the assessor, make any valuation of any property of a tax-payer. *Ferris* v. *Coover*, 10 Cal. 590; *People* v. *Reynolds*, 28 Cal. 108. The listing of the property of plaintiff was therefore illegal and void, and it had no place on the tax-roll of Custer county.

It is true that all the property plaintiff had in Montana, not exempted by statute, was subject to taxation; but that tax could be collected only as was provided by law. The plaintiff admits that it had about 4,000 head of cattle subject to taxation, and that the tax on the same was $1,964. This amount it does not seek to recover back from defendant. But the complaint shows that it paid some $3,485.40 more than was the proper tax. In other words, the defendant has received from plaintiff $3,485.40 more than it was lawfully entitled to, and this plaintiff seeks to recover back. It is urged by defendant that, if this is an illegal tax, the remedy for plaintiff to have pursued in the matter was for it to have appealed to the board of county commissioners as a board of equalization, asking to have this tax properly adjusted. When a tax is illegal, one is not obliged to apply for an abatement, unless the statute makes that the sole remedy. Cooley, Tax'n, p. 528. When one has paid an illegal tax, the right to recover the same back from the corporation to whom the same has been paid exists, although the tax-payer had not appeared before the board of equalization to contest the assessment. 2 Desty, Tax'n, § 131, p. 787. In the case of *Stanley* v. *Supervisors*, 121 U. S. 535, 7 Sup. Ct. Rep. 1234, Justice FIELD, in speaking for the court, says, (page of opinion 549, 121 U. S., and 7 Sup. Ct. Rep. 1239:)

"It is only where the assessment is wholly void, or void with respect to separate portions of the property the amount on which is ascertainable, or where the assessment has been set aside as invalid that an action at law will lie for the taxes paid or for a portion thereof."

Again, in same case, on page of opinion 550, 121 U. S., and page 1239, 7 Sup. Ct. Rep., the justice says, in speaking of boards of equalization or revision:

"To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation where the assessing officer had jurisdiction to assess the property."

In this it appears by implication that, where the officer had no jurisdiction to assess property, and the assessment was void, there was no necessity to appeal to a board of equalization to correct the assessment.

In the case at bar the assessor had no jurisdiction to list the property of plaintiff, and, the property not being listed, he had no right or authority to value the same. It is only property that has been listed that an assessor can value. The whole scope of the statute of 1879 upon taxation shows this. The statute does not say that an appeal to the board of equalization is the only remedy for illegal taxation a tax-payer shall have. It is said that, where there are any errors and irregularities in assessing or collecting taxes, the law has provided a special tribunal in the shape of a board of equalization or revision; even in some states the statute seems to require an appeal to such a board in the case of illegal taxation. The decisions are quite uniform that an assessor in valuing property acts judicially. But we have seen *supra* that in this case his acts in listing and valuing the property were illegal and void; that is, that his judgment as to value was void. Can it be that a void judgment can be rendered valid and of binding force by a failure to appeal from the same to this special tribunal, the board of equalization, and object to the same, or ask to have it corrected? Such are not the views entertained of a judgment in a court of general jurisdiction. See Freem. Judgm. (2d Ed.) § 117. There is no reason in a rule that would give greater weight to the determination of a special officer. The fact that the assessor placed the list of property that he had made upon the assessment roll, and the valuation of the same he had made thereof, would not cure the fatal defects in the preliminary proceedings. Says Judge Cooley, in his work on Taxation, page 259:

"Of the necessity of an assessment no question can be made. Taxes by valuation cannot be apportioned without it. Moreover, it is the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follows it. Without an assessment they have no support, and are nullities."

In an early case in Massachusetts it was held, where the assessor had no jurisdiction to assess a tax-payer, that there was no necessity for applying to a board of review to correct the error complained of. *Preston v. Boston*, 12 Pick. 7. The case of *Railroad Co. v. Patterson*, (Mont.) 24 Pac. Rep. 704, I do not consider in point. It is true that there are some assertions in that opinion which seem to cover the ground that no action can be maintained in equity to enjoin the collection of a void tax until there has been an appeal to the board of equalization, but, taken altogether, I think it does not controvert the doctrine that it is only in cases where there are errors and irregularities in the assessment that an appeal must first be made to the board of equalization. In it the court quotes from High on Injunctions, (volume 1, 2d Ed. § 493:)

"Where, therefore, a particular manner is provided by law, or a particular tribunal is designated, for the settlement and decision of all errors or irregularities on behalf of persons dissatisfied with a tax, they must avail themselves of the legal remedies thus prescribed, and will not be allowed to waive such relief and seek in equity to enjoin the collection of the tax."

It will be observed here that the words "errors or irregularities" are used. I do not think that these words can cover the case of a void tax,

—that is, where the assessor has acted without jurisdiction. The courts generally assert that a court of equity cannot sit to revise the action of an assessor in valuing property. If the case of *Railroad Co.* v. *Patterson, supra,* can be construed to hold that, where the assessor acted with- out jurisdiction, the only remedy for a party aggrieved is to appeal first to a board of equalization before any other action can be maintained, I do not think the authorities support such a view, nor do I think that such a case was presented to that court to decide. It was admitted that part of the tax was proper, and plaintiff had not offered to pay this. And the court seems disposed to adopt the rule in Massachusetts, that, where a man is assessed upon property he does own and on property he does not own, it is simply an overvaluation of the property he does own. If this rule was not sustained by a long line of decisions, rendered by most able and justly distinguished jurists in that state, it would not commend itself very strongly to the legal profession. A legal rule based upon matters not true as facts ought not to be laid down or followed. It is not true as a fact that listing to a man property he does not own is only an overvaluation of the property he does own. It is a general rule that, where a party owes part of a tax a court of equity will not enjoin the collection of any of it until this part is paid. And if there was in that case only an overvaluation, then most all the decisions express the rule that an appeal should be made to the board of equalization, or by whatever name such a board may be called, to correct this error; and, in the absence of fraud or mistake, there is no power to set its de- termination aside. This I understand to be the extent of the decision in *Railroad Co.* v. *Patterson, supra.* But where an assessment is void, no such rule prevails. In the case of *Supervisors* v. *Stanley,* 105 U. S. 308, the United States supreme court says:

"If the officers who assessed and collected this tax were utterly without authority to collect any tax whatever, or, if there was no law by which in any case they could assess and collect a tax on shares of national banks, then it is of no consequence to inquire of anything beyond the fact that plaintiff's as- signors did pay such tax under legal compulsion."

When this case came up again for consideration, (see 121 U. S. 545, 7 Sup. Ct. Rep. 1236,) that court again says:

"If he had debts, the assessment without a deduction for them in the esti- mate of the taxable value of the stock was only voidable. The assessing of- ficers, in making the assessment, were acting within their authority, until duly notified of the debts which were to be deducted. In such case, there- fore, the duty devolved upon the stockholder to show to the assessing offi- cers what his debts were, and to take such steps as were required by the law to obtain a correction of the overassessment."

Here, I think, the line is distinctly drawn between a void and an er- roneous or voidable tax. In the first place, it is of no consequence to inquire of anything beyond the fact that the party did pay such tax un- der legal compulsion. In the second place, the party is required to take such steps as were required by the law to obtain a correction of the overassessment. The conclusion I reach is that the plaintiff need not

show that he applied to the board of equalization of Custer county to correct the wrongs it complained of.

It was urged by counsel for defendant that plaintiff ought not to have paid the tax, but should have resorted to a court of equity to have enjoined its collection. There is nothing presented in this case which would have warranted plaintiff in resorting to such a forum. In the cases of *Dows* v. *City of Chicago*, 11 Wall. 108, and *Hannewinkle* v. *Georgetown*, 15 Wall. 547, the United States supreme court held that a suit to enjoin an illegal or void tax would not lie "unless there were some special circumstances bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury, or, where the property is real estate, throw a cloud upon the title of the complainant." No circumstances such as would bring this case under the head of any recognized rule awarding equitable relief appear in the record. The only remedy left for plaintiff, then, was to allow its property to be seized and sold, and then bring an action against the collector in trespass, or to pay the tax claimed when the legal compulsion was presented under protest, and bring its action to recover the same back. I think enough appears in the complaint to show that the payment of what was claimed as a tax was made under compulsion. A warrant had been issued for its collection, and the collector had attempted to seize the property of plaintiff thereunder, and payment was made with the view of preventing this. When a tax is paid involuntarily,—that is, under legal compulsion,— it may be recovered back in an action at law, and from the county who has received and holds the tax. *Newman* v. *Supervisors*, 45 N. Y. 676; 2 Desty, Tax'n, p. 795; *Detroit* v. *Martin*, 22 Amer. Rep. (notes) 519– 520. Numerous authorities might be cited to sustain the above proposition. For the above reasons it is ordered that the demurrer to the complaint be, and the same is hereby, overruled.