Hillsborough, }
  June, 1900. }

## AMOSKEAG MANUFACTURING CO. v. MANCHESTER.

The tax upon polls cannot be considered in determining the amount of the abatement to which a taxpayer is entitled because of overvaluation of his taxable estate.

One who has paid the tax assessed against him is entitled, upon maintaining a petition for abatement, to judgment for the excess so paid, with interest at six per cent.

PETITION, for tax abatement.   The plaintiffs paid December 1, 1897, the tax in question.   Under the decision in this case at the last term (*ante, p.* 200), the plaintiffs moved for judgment for $28,446.64, and interest thereon from December 1, 1897, at six per cent.   The defendants claimed the plaintiffs could have judgment for $26,062.91 only, without interest; and that if interest were allowed, it should be at a less rate ·than six per cent.

*David Cross* and *Frank S. Streeter*, for the plaintiffs.

*Elijah M. Topliff*, *George A. Wagner*, and *Arthur O. Fuller*, for the defendants.

I.   In computing the amount of the abatement, should the poll taxes assessed in Manchester for the year in question be taken into account?   The whole principle of the decision rendered at the December term, 1899, in this case (*ante, p.* 200), and in the other cases on the same subject (except *Dewey* v. *Stratford*, 42 N. H. 282, which has been expressly overruled), is this: If the error or wickedness of the assessors in assessing the plaintiff's property at the valuation at which they did assess it,— no matter whether that

valuation is correct, or more or less than its true value,— threw
on the plaintiffs more than their proportionate share of the "common burden," the injustice must be remedied, and a convenient
method of remedying it is by so remodeling the valuation as to
reduce the resultant tax to that sum which is the plaintiffs' proportionate share; and this is to be done, not by assessing on a
valuation of one third the true value of one class of property and
three fourths the true value of another class, just because the
assessors' valuation of different classes of property differed in
varying degrees from the valuations subsequently fixed by the
referees, but by figuring out, from the data furnished by the
referees' report, what ratio, on the average, the sums assessed to
other taxpayers of Manchester bore to the sums which would
have been assessed to them if the assessors had placed on all
classes of estates the valuation which the referees' finding fixes,
for the purposes of this case, as being the true valuation.

The "common burden" of which the plaintiffs were to bear
their share — the public expense to which they were to contribute
their just proportion — was the total tax of Manchester for 1897,
which amounted to $634,127.52; and the assessors so distributed
the burden that it was in fact raised by means of a tax of $2.08
per man exacted from the poll taxpayers, and $2.08 per $100
exacted of the plaintiffs on a valuation of $6,000,000, and taxes of
$2.08 per $100 exacted from other property owners whose property the assessors valued at $22,194,846. If the assessors had
possessed the referees' unerring judgment as to true values, and
the court's complete understanding of the meaning of section 1,
chapter 58, of the Public Statutes, the valuation, rate per $100,
and resultant distribution of the "common burden" would have
been as follows:

| Burden-bearers. | Valuations. | Rate. | Burdens. |
|---|---|---|---|
| 12,921 polls . . | $1,292,100 | $1.267 | $16,370.90 |
| Amoskeag Mfg. Co. . | 8,126,971 | " | 102,968.72 |
| Other property owners than the plaintiffs . | 40,630,320 | " | 514,786.16 |
| | $50,049,391 | | $634,125.78 |

The difference of $1.74, arising from not carrying out decimals,
is of course one of those *minima* as to which "*non curat lex.*"
These figures, we think, cannot be disputed, and it is a blessing to
have something beyond dispute. Sorting the above a little, it
will be seen that —

The plaintiffs should have been taxed . . $102,968.72

| The total poll taxes should have been, | $16,370.90 |
| Other taxes (not the plaintiffs') . . | 514,786.16 |
| | $531,157.06 |

Here is something very tangible. The plaintiffs' share of the "common burden," which the plaintiffs would certainly have been compellable to pay if the other taxpayers had paid their shares, would be determined by a division of 10,296,872 by 53,115,706. But those others were not taxed $531,157.06. Instead, they were taxed 2.08 per cent of $24,486,946, which is $509,328.48. It therefore not only "appears," but is an indisputable mathematical fact found by the referees, that of $531,157.06, the share of the "common burden" which ought to have been borne by others than the plaintiffs, $509,328.48 was actually so borne, and that the plaintiffs, whose just share of the same burden was $102,-968.72, paid only $21,831.28 in excess of their just share. Still, the court having decided that, as the assessors did not impose on the other burden-bearers their just share, the plaintiffs must also be let off as easily as the average taxpayer was, we must abide by the decision, and compute the plaintiffs' tax accordingly. This gives us the following proportion: The share which others ought to have paid ($531,157.06) is to the sum which they did pay ($509,328.48) as the sum which the plaintiffs ought to have paid ($102,968.72) is to the sum they must pay; and by an application of the "rule of three" the last sum is found to be $98,-737.09.

| As the plaintiffs did pay . . . . . | $124,800.00 |
| Instead of . . . . . . . | 98,737.09 |
| The amount to be abated is . . . . | $26,062.91 |

This is absolutely, mathematically correct, barring fractional variations caused by not carrying decimals out to infinity, and is the result sought if the theory of the court's decision is correct — that is to say, if the plaintiffs are to bear the same fraction of their rightful portion of the "common burden" as the other Manchester taxpayers bore of their rightful share of that same burden. Any method of figuring which produces substantially that result is substantially right, because it carries out the principle laid down by the court; and any which does not bring that result does not carry out the principle, and is therefore necessarily wrong, whether it does or does not follow literally the wording of some portion or other of the opinion. The ultimate test, and only true test,

of any alleged legal rule or mathematical formula is its result; and no matter in what words the court may have expressed its opinion, it must be so construed as to reach the result intended, just as a will must be construed in accordance with its purpose and spirit rather than with some stray phrase it happens to contain.

This computation is in accordance with the principle laid down in the court's opinion. While the opinion does direct that the computation be made in accordance with the assessors' incorrect valuation of other taxable estates, it does not direct that the errors caused by valuing polls at their true statutory value, instead of the erroneously low rate adopted for some taxable estates, shall not be considered in making the computation; and it does expressly say that the computation shall be made in accordance with the principles on which the decision is based. We do not understand that it was the court's intention to lay down any hard-and-fast rule. On the contrary, the opinion quotes from another decision, "the points to be considered . . . cannot be fixed by an invariable rule" (*Manchester Mills* v. *Manchester*, 58 N. H. 38, 39), and reserves the right of the parties to be heard as to the computation.

In order to see whether the result the court dictates — distribution of the "common burden" in accordance with the principles laid down — absolutely requires that the poll taxes be taken into account, in reckoning the whole thing out by way of an assumed new valuation, we have done some more figuring. Applying the rule the court laid down, and entering the polls in the account, the computation gives 58.41 per cent as the ratio which the assessed valuations other than the plaintiffs' bear to the true valuations. This per cent of the plaintiffs' true valuation gives $4,746,963 as the plaintiffs' valuation corrected to the average rate. Assessing $2.08 per $100 on that sum, we have, as the plaintiffs' corrected tax, $98,736.83, differing by only twenty-six cents from the corrected tax as found by our previous method.

| | | | |
|---|---|---|---|
| From the tax the plaintiffs did pay | . | . | $124,800.00 |
| Deduct the amount just found | . | . | 98,736.83 |
| | | | |
| And the abatement would be | . | . | $26,063.17 |

Leaving the polls out altogether gives 57 per cent as the average rate of valuation, and makes the plaintiffs' "corrected" valuation (erroneous to match other errors) $4,632,373.47; and by assessing $2.08 per $100 on that, we have as the plaintiffs' corrected tax $96,363.36, resulting in an abatement of $28,446.64.

This result, however, being different from the result before demonstrated to be right, is necessarily wrong — not because we

figured it differently before, but because it leaves the plaintiffs to pay a less fraction of the tax which ought to have been assessed to them than the rest of the taxpayers paid' of the tax which ought to have been assessed to *them.* Looked at in one aspect, the error arises from applying to the corrected valuation the erroneous rate ($2.08 per $100), which is in itself the crystallization and embodiment of all the errors committed in the distribution of the common burden. Looked at in whatever way you will, the error manifestly arises from dividing the burden-bearers into classes, and comparing the plaintiffs with that class only whose liability to share in the common burden was based on the possession of visible, specifically taxable property. This is the very error into which the referees fell when they subdivided the burden-bearers still more minutely into persons taxed for stocks in trade, persons taxed for real estate, and so on, and applied different rules to the several classes, according as their liability to contribute rested on the ownership of a house-lot worth $500, or some other species of property of the same value. In reality, the 12,921 persons assessed (unjustifiably high by 65 per cent) for polls were largely the same who were assessed (unjustifiably low by varying percentages) for stocks in trade and real estate, and (unjustifiably high by 65 per cent) as owners of various other kinds of estate. Indeed, with the exception of non-residents, war veterans, minors, and women, all who were taxed on real or personal estate must also have been taxed on their polls, so that the payers of property taxes as a whole — and it is as a whole that we are to consider them in getting at the average rate — were taxed more heavily by $26,874.68 than we should suppose if we disregarded the poll taxes; and therefore the plaintiffs should not escape as lightly as we should in that case suppose the others did. In other words, as the poll tax did enter into the computation of the burden thrown on the rest of the burden-bearers, it must and necessarily does enter into any really correct computation of the plaintiffs' share.

That errors in regard to poll tax do properly enter into the question, and that this fact has been recognized by this court, is shown by the supposed case (used by *Doe,* C. J., as an illustration in *Boody* v. *Watson,* 64 N. H. 162, 183) of the assessors omitting to levy poll taxes; and the consequent wrong to other taxpayers, and the manifest absurdity of supposing such wrong to be remediless, are there pointed out. If their omission would affect the case, the fact that they were not omitted must likewise affect it, especially where the amount contributed by them was, as in the case at bar, $26,874.68, instead of $16,370.90, which they were bound to contribute. Indeed, it is difficult to discover any sound

reason why the poll-tax levy, which is raised for the same purposes and in the same manner and devoted to defraying the same public expenses as the other taxes, stands on any different footing than the rest of them.

The doctrine that when the valuation of other estates in the same taxing district with the plaintiff has been such as to do him an injustice, he is to have a remedy, even though his estate was not overvalued, but that this remedy shall not be made a means of injustice to others, as would be the case if the collection of the rightful part of the tax were enjoined, was not evolved by our judges from their own inner consciousness, but seems first to have been enunciated by courts in some of the western states.    When our own court adopted it (casting aside forever, we hope, the old doctrine, of which *Dewey* v. *Stratford*, 42 N. H. 282, shows the injustice), it at the same time adopted as a part of the theory — though in theory only, and as a mere means of computing and measuring the justice to be meted out — the method which the western courts had prescribed : a new assessment, valuing the plaintiff's estate on the same erroneous ratio applied to other estates subject to the same tax.    Whether this is the best method, and therefore all that the parties may properly require, was not decided ; and in *Manchester Mills* v. *Manchester*, 58 N. H. 38, the court was careful to " hedge," by declining to lay down an invariable rule.    It may or may not have had in mind that a rule originating in states whose remedial methods differ so widely from our own would probably require modification when applied to our system ; but the court's cautious refusal to commit itself to any hard-and-fast rule is significant.

The reason why the western courts resorted to the method by re-assessment, instead of just figuring out the plaintiff's share by " rule of three," is not far to seek.    Though their jurisprudence as a whole is the same as ours,— the common law, modified in varying degrees,— there are many important differences in the administrative features of the law in the different sections of the Union ; so that while decisions in the most remote states are useful as expositions of legal principles, it is always necessary to bear in mind these differences of method, and consider how far the court, in stating the remedy to be given in a particular case, is influenced by the administrative system prevailing in its own state.    Among the most marked and best known of these differences is that as to methods of enforcing rights of individuals against municipal corporations.    Here, when the right is established it is enforced by execution.    West of the Hudson, the only way is to persuade or compel the assessors to levy a tax to pay the sum the court has found due the plaintiff.    This is so well

known that we need cite no cases. Similarly, where there are errors in the assessment of a tax, the usual method in that part of the Union is to compel an actual correction of the assessment by writ of *certiorari*.

· In this state, where no such cumbrous procedure is known, there is manifestly no occasion to resort to any actual or fictitious re-assessment; but the proper way is the obvious one,— the first adopted by us in the foregoing computations,— to find by " rule of three " the precise and actual amount of error, and correct it by subtracting that amount from the erroneous tax complained of. This strikes at the root of the matter, and cannot be wrong. But if our regard for precedent is so great that we cannot bring ourselves to abandon the idea of getting at a new and erroneous valuation, we should, at least, make that valuation such as to do justice to both parties. In this case the nominal parties are a manufacturing corporation and a municipal corporation; but the real parties — those whose pockets the result touches — are the stockholders of the Amoskeag Manufacturing Company, and the men and women who must bear all the burden of public expense in Manchester except what those stockholders bear. Among the latter are the poll taxpayers ; and whatever any of these have contributed toward ·the common charge cannot rightfully be disregarded, no matter by what name it was exacted, whether as poll tax or property tax.

II.   Are the plaintiffs entitled to interest on the abatement, and if so, at what rate per cent? We are unable to perceive any legal reason for allowing interest on the abatement. There was no exhibition of the collector's warrant, no legal proceedings or other compulsory process begun or threatened, nothing except the bare notice of the tax which it is customary to give all taxpayers ; nor is there anything from which it can be inferred that the disputed portion of the tax assessed would have been collected if the plaintiffs had not elected to pay. December 1, 1897, the plaintiffs paid the entire amount assessed because they chose to pay, deeming that course more for their advantage than to take the chance of having to pay ten per cent interest in case they should not prevail on a petition for abatement. If the plaintiffs had not made this choice, the chances are even that the city would have been delighted to borrow the money at the low rate at which cities can always borrow, and let the disputed sum remain unpaid, being certain of recovering ten per cent on so much as the plaintiffs did not ultimately succeed in striking off,— which interest would in great measure make good to the city the loss occasioned by such reduction as might be made in the tax itself.

The effect of the payment was merely that the city has had in

its hands since December 1, 1897, some money of which it was known that some part might eventually be found to belong to the plaintiffs. Of this unknown quantity the city treasurer was the custodian chosen by the plaintiffs, and the city has ever since stood ready to pay it to the plaintiffs whenever it should become a known quantity. It has now paid to the plaintiffs $26,000, which they are, under the decision, entitled to have. Under such circumstances there can be no contractual liability for interest, for there was no contract made, nor any authority in the city treasurer to make one; nor is there any liability on the ground of wrongful receipt or detention of the money until the amount should be liquidated, for that was the very purpose for which the plaintiffs paid it to the treasurer. The plaintiffs have reaped the very advantage they sought. They escaped paying ten per cent per year on the part found to belong to the city, and are not entitled to further advantage. The city ought not to be mulcted in interest for merely accepting the money the plaintiffs voluntarily paid. The "protest" made by the plaintiffs at the time of payment amounts to no more than a sort of notice of intention to apply for abatement and recall some portion of the money, if found entitled. The time for applying for abatement had not then expired, and the "protest" was probably deemed necessary in order to rebut any inference of waiver of the right to apply for one. That such a payment is, in the eye of the law, voluntary, and the money so paid cannot be recovered, unless by some express statute creating an exception to the general rule, seems abundantly established by the authorities — so much so that we deem citations needless.

It may be thought that the court's power and duty to make such order as justice requires, justifies the allowance of interest whenever it would be equitable to allow it. We incline somewhat to that view, if and so far as justice to both parties may be found to require its allowance in any particular case. That justice does, in this case, require the city to pay interest which it never received and could not have received, is not clear; but it seems to us that justice certainly does not require the payment of more interest than the fund would probably have yielded if it had been put at interest. What rate of interest it would have yielded if conservatively invested, where it would with certainty be forthcoming whenever called for, is not shown by the case, and we think it was incumbent on the plaintiffs to show it; but the court will, of course, judicially notice the universally known fact that our savings banks pay not over three and one half per cent, and that our cities have no difficulty in borrowing at the same or a lower rate, so that the net income from long-term loans to cities is

not over three and one half per cent, and that from demand or short-term loans to municipalities less than that. Our view is, therefore, that interest, if recoverable at all, should be computed at about three per cent per year on the whole abatement, to the time $26,000 was paid into court, and on the balance at the same rate to the time of payment of such balance.

PARSONS, J. By an unbroken line of decisions in this state during the last seventy-three years, from the *Opinion of the Justices* in 1827 (4 N. H. 565) to the decision in this case at the last term (*ante, p.* 200), it has been conclusively settled that the constitutional rule of equality in taxation requires that throughout the same taxing district the same tax shall be laid upon the same amount of property, "so that each man's taxable property shall bear its due portion of the tax according to its value." *Opinion of the Justices*, 4 N. H. 565, 568. The share which every person is bound to contribute for the protection in the enjoyment of his life, liberty, and property, to which he is entitled (Bill of Rights, *Art.* 12), is his proportional part of the expense of such protection according to the amount of his taxable estate. *Ib.,* 568. These fundamental propositions were restated at the last term, and the extent of the plaintiffs' right to an abatement thereby determined. A practical method for the arithmetical computation of the amount of such abatement in accordance with the principles laid down was suggested, and the making of such computation, in case the parties did not agree, was left for the trial term.

The method by which the constitutional rule, which requires the plaintiffs to pay on their taxable estate in the city in taxes the same sum only that is paid by others on the same amount of property, is worked out, is immaterial. While the method suggested may not be the simplest or best that can be found or invented, the test of the accuracy of this or any other method for the practical application of the constitutional rule of equality is whether the result sought is reached by the rule used. If the result of any process of mathematical reasoning applied to the facts assesses against the plaintiffs the same tax in amount which was in fact assessed against others upon the same amount of taxable estate, the process satisfies the constitutional rule, and is correct and sufficient for the purpose, although other methods may be found or invented producing the same result with less labor or less liability of error. On the other hand, any scheme of mathematical reasoning which similarly applied produces a different result, *i. e.,* assesses against the plaintiffs a tax greater or less than that assessed to others upon the same amount of taxable estate,— a result in conflict with the constitution and fundamental principles

of justice,— is inevitably unsound and erroneous, either in the theory itself, or in the premises upon which such system is based. If the method is correct, the result must be right.  If the result is wrong, the reasoning is fallacious.  The accuracy of the method of computation is safely and sufficiently tested by the result.

It is conceded that by computation according to the rule suggested at the last term the plaintiffs are entitled to an abatement of $28,446.64.  As to reach this result the plaintiffs' taxable estate was appraised at the same ratio to its true value as all the other taxable estate was in fact appraised by the assessors in proportion to its value, and the same percentage or part of such appraisal taken as the tax, it is evident that the plaintiffs' tax, so assessed upon their eight millions of taxable estate, in round numbers, must be of the same amount as was laid upon an average upon each other eight millions of taxable estate owned by other taxpayers.  This result complies with the constitutional rule of equality, and the process by which such result is obtained must be correct.  Since this result is right, any other result, however attained, is wrong ; for there cannot be two different sums, each of which is equal to the tax laid by the assessors upon the same amount of property in the hands of others.

The defendants have urged upon our consideration different processes of mathematical reasoning founded upon the referees' report, by each of which it is claimed that the abatement to which the plaintiffs are entitled is established to be $26,062.91 ; or, in other words, that the tax which the plaintiffs ought to pay exceeds that paid by others upon the same amount of property by the sum of $2,383.75.  For this reason the sum for which the defendants contend is wrong, because it unavoidably implies that for some reason the plaintiffs ought to be required to pay more than their constitutional, equal share.  As was elaborated in the former opinion in this case, upon the numerous authorities in this jurisdiction, the abatement to which the plaintiffs are entitled is one which will cause them to pay the same sum on their taxable estate as other taxpayers paid on taxable estate of the same value. The contention of the defendants cannot be sustained, because it violates this rule, which must be regarded as so firmly established by the decisions heretofore cited, as well as by fundamental principles of justice and the requirements of the constitution, as not to be now open to discussion or review.

As the abatement contended for by the defendants results from an unconstitutional assessment against the plaintiffs and is wrong, the fallacy of the argument by which it is supported is immaterial. Since the erroneous result establishes the fallacy of the argument, it is not necessary to ascertain in what particular the fallacy con-

sists.   But as the argument has been pressed upon us with great
force and ability by counsel, it may not be amiss to refer briefly to
the point wherein it appears to us the error lies.   The fallacy of
the argument consists in considering the error of the assessors in
ascertaining what portion of the whole tax under the statute they
were required to assess upon the polls, and in attempting to allow
for or partially correct such error in this proceeding, which relates
only to the constitutional distribution of the tax upon property.
The statute (P. S., *c.* 59, *s.* 1) under which the division of the tax
is effected is as follows: " All taxes for any year following the
first day of April shall be assessed upon the invoice taken in that
month, estimating each poll at fifty cents, and taxable property at
the rate of fifty cents on each hundred dollars of its appraised
value."

From the fact that each poll is estimated under the statute in
making the assessment at the same sum as one hundred dollars in
property, as appraised, it is perhaps commonly, though incorrectly,
understood that polls are appraised at one hundred dollars each
for taxation.   As in the appraisal under consideration the asses-
sors, instead of appraising estates at their value, appraised them
at a much less rate, the result was that the sum assessed upon
each poll was increased above what it would have been if the
statute had been followed.   The industry of counsel has furnished
us with a complete re-assessment of the tax upon the corrected
valuation made by the referees, as between the poll taxpayers,
the plaintiffs, and other property taxpayers.   By this, it appears
that upon a correct valuation of estates, in the distribution of the
tax, the poll taxes should have been $16,370.90, instead of $26,-
875.68, as they were actually assessed.   The assessment was
erroneous.   Upon a petition for abatement by the parties injured,
— the poll taxpayers,— or such other proceeding as might be
warranted by the facts, the wrong could be remedied.   *Boody*
v. *Watson*, 64 N. H. 162, 183.   But a tax unconstitutional as
between the plaintiffs and all other property taxpayers is not
made constitutional by any error of the assessors in laying the tax
upon polls; nor is the right of the other property taxpayers to
throw any part of the tax which they ought to pay upon the plain-
tiffs· established by the same error.   *Edes* v. *Boardman*, 58 N. H.
580, 589.   There is no constitutional provision as to the relative
amounts to be assessed upon polls and upon property.   Within
·the constitutional restrictions that all taxes must be proportional
and reasonable, the persons who should be taxed for their polls,
and the relation between the poll tax and the tax upon estates,
rests in the discretion of the legislature.   Const., *Art.* 5 ; *Opinion
of the Justices*, 4 N. H. 565, 568.   Since 1784, various provisions

have been made as to the persons who should pay poll taxes, and the relation between poll taxes and the tax upon property. The latter has varied from the tax assessed on three hundred dollars in value of property to the tax upon one hundred dollars. P. S., *c.* 55, *s.* 1 ; *Ib., c.* 56, *ss.* 2–4 ; *Ib., c.* 59, *s.* 1 ; Laws 1871, *c.* 16, *s.* 1 ; G. S., *c.* 53, *s.* 1 ; Laws 1851, *c.* 1115, *s.* 1 ; Laws 1833, *c.* 126, *s.* 5 ; Laws 1832, *c.* 108, *s.* 1 ; Laws 1830, *c.* 41, *s.* 1 ; Act of December 19, 1803 (Laws, *ed.* 1805, *p.* 218) ; Act of February 8, 1791 (Laws, *ed.* 1797, *p.* 202). A legislative enactment requiring such a distribution of the taxes between polls and estates as would compel a portion of the taxpayers to pay on their property more than others paid on the same amount of property would be in violation of the constitution. No error of the assessors can compel or authorize the court, in adjudging an abatement, to violate the same constitutional provisions.

It is suggested that the method indicated by the court creates a division of the burden-bearers into classes, which was held erroneous in the same opinion. The constitution (Part II, *Arts.* 5 and 6) recognizes two classes of taxpayers,—those paying upon polls and those upon estates,— while the provision requiring equality prohibits the division of property into different classes differently taxed, which was the point decided. The action of the assessors in making the poll tax too large violated no constitutional right of the poll taxpayers. A legislative provision that the same tax be assessed on each poll as was assessed on fifty-seven dollars' worth of property would not be open to objection upon constitutional grounds. The violation of the existing direction of the statute by the assessors cannot render nugatory the constitutional rule of equality.

As a ratable poll is not taxable estate, but under the constitution a distinct subject of taxation, and as the assessors have no authority to appraise a poll at one hundred dollars, the suggestion that the polls should be treated as so much estate valued by the assessors at one hundred per cent, and thereby the average valuation of taxable estate in the city other than the plaintiffs' be increased to 58.41 per cent, requires no remark. The erroneous result which would follow such an application of the rule, suggested in the former opinion, demonstrates the fallacy of such application. The theory of the defendants' process of computation — the determination of the plaintiffs' proportional share of the common burden — is correct. The error consists in taking as the common burden to be proportioned the whole tax instead of the property tax. Applying the defendants' mathematical reasoning to the tax assessed upon estates, the result heretofore found to be correct is obtained.

There may be other reasons why the defendants' methods of computation produce a wrong result. The fact that the result is wrong because it violates the plaintiffs' constitutional right, prevents the adoption of the methods suggested. This fact alone, without reliance upon the foregoing or any other reasons for the error that might be urged, compels this conclusion. The tax upon polls cannot be considered in determining whether the tax upon property is equally distributed.

The right of a taxpayer who has paid more than his share of the public expense to interest upon the sum paid in excess of his share was settled in *B. & M. Railroad* v. *State*, 63 N. H. 571, 572, 573. We see no reason to reverse the conclusion there reached. The rate of interest is settled by the statute. P. S., c. 203, s. 1.

*Case discharged.*

CHASE and PEASLEE, JJ., did not sit: the others concurred.