**CITY OF FRANKLIN v. COLEMAN BROS. CORPORATION.**

**COLEMAN BROS. CORPORATION v. CITY OF FRANKLIN.**

Nos. 4085, 4086.

Circuit Court of Appeals, First Circuit.

Dec. 13, 1945.

F. A. Normandin, of Laconia, N. H. (Normandin & Normandin, of Laconia, N. H., of counsel), for City of Franklin.

Robert W. Upton, of Concord, N. H., for Coleman Bros. Corporation.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

## WOODBURY, Circuit Judge.

These are cross appeals from a final judgment entered by the District Court of the United States for the District of New Hampshire in an action brought to recover personal property taxes paid under protest. The facts are as follows:

In 1936 the United States acquired title to certain lands on both banks of the Pemigewasset River in the City of Franklin, New Hampshire, for the purpose of erecting thereon a flood control dam as authorized by the Flood Control Act of 1936. 49 Stat. 1570, 33 U.S.C.A. §§ 701a, 701b, 701c, 701d–701f, 701h. In May 1939, the New Hampshire Legislature (Laws of 1939, Ch. 149, § 1) gave consent to the acquisition of these lands but retained "concurrent jurisdiction with the United States in and over any such lands to the extent that all civil and criminal processes issued under authority of this state may be executed thereon in the same way and manner as if this consent had not been given." Then on September 6, 1939, the plaintiff below, a Massachusetts· corporation having its principal place of business in Boston, entered into a written contract with the United States for the construction of the dam. It was assigned a work area, so called, on the lands acquired by the United States and it began work in the fall of 1939. By April 1, 1940, the plaintiff had enclosed its work area with a wire fence, had built therein an office building, a repair shop and some other structures, and was making use of the area as a place for storing its heavy equipment consisting of power shovels, earth movers, tractors, rollers, compressors, pumps and other portable machinery, when not in actual use on the job.

Late in April, 1940, one of the defendant's Board of Assessors called at the plaintiff's local office and presented the usual inventory blank sent to taxpayers[1] to the plaintiff's local manager with the request that it be filled out and returned. The· plaintiff's manager informed the assessor that he was in doubt as to whether the plaintiff's property was locally taxable and that no action on the inventory would be taken without advice from the plaintiff's office in Boston. The inventory blank was forwarded to the plaintiff's Boston office and subsequently returned to the defendant's Board of Assessors with a letter stating: "We believe after due investigation, that our equipment on our job at Franklin, N. H., is not taxable by the City of Franklin because of the fact that we are performing construction work on a United States Army Reservation." In May, 1940, the assessors visited the plaintiff's local office again, and on this occasion they were shown the plaintiff's buildings and equipment. At this time an inventory listing "equipment and buildings on the site of the flood control dam of the value of $200,000." was made out and this inventory was later returned under protest. The assessors assessed taxes as of April 1, 1940, against the plaintiff in the amount of $7,700, in August the plaintiff received a bill therefor, and on November 22, it sent its check in the above amount to the defendant's tax collector with a letter stating: "This payment is made under protest and for the purpose of saving the company from any penalties, the personal property on which the tax was levied being located on real estate which is the property of the United States and said personal property not being taxable by said City, and we hereby expressly disaffirm and deny any right of said City to tax said property."

In April of the following year (1941), the plaintiff again filed an inventory, also under protest, in which it valued its buildings and equipment at $147,600, and upon this inventory a tax was assessed as of April 1, 1941, in the amount of $4,557. The plaintiff paid this tax on November 17, 1941, under the same protest it had made the year before. No taxes were as-

---

[1] Revised Laws of New Hampshire (1942) Ch. 75.

sessed against the plaintiff for years following 1941, although the dam was not completed until October, 1943. On May 17, 1944, the plaintiff brought the instant action in the court below to recover the taxes it had paid in 1940 and 1941 with interest thereon.

The court below found as a fact that all of the property taxed "had its situs on land belonging to the United States," and ruled that "the assessors of the City of Franklin had no jurisdiction over the plaintiff corporation or its property." [58 F.Supp. 551, 554.] Then it found as a fact "that the plaintiff complied with the requests of the assessors of the City of Franklin in filing its inventory and paying the taxes assessed prior to December 1 each year under protest to avoid the penalties prescribed in Chapter 75, section 13, of N.H. R.L.,[2] relating to doomage, the payment of ten per cent interest or the possible distraint and sale of its property as prescribed in Chapter 80 of the N.H.R.L." In consequence of the foregoing the court below said it felt "constrained to hold that the plaintiff have and recover the amount so paid and held by the City of Franklin without interest." From the final judgment entered in conformity with these findings and rulings both parties have appealed; the defendant on the ground that the plaintiff is not entitled to recover as a matter of law, the plaintiff on the ground that it is entitled to interest.

The defendant now concedes that it had no jurisdiction to tax the personal property owned by the plaintiff and used and stored by it on lands belonging to the United States. Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; James v. Dravo Contracting Co., 302 U.S. 134, 138–149, 58 S.Ct. 208, 82 L. Ed. 155, 114 A.L.R. 318; Scribner v. Wikstrom, 93 N.H. 17, 34 A.2d 658. Nor does it contend that the evidence is insufficient to support the finding that the personal property taxed had its situs on federal land. Its position is that the taxes paid cannot be recovered, first, because they were not paid under legal compulsion, but were paid voluntarily, second, because the plaintiff's exclusive remedy was by petition for abatement under R.L. Ch. 77, §§ 13, 14, third, because a tax assessment is a judgment which cannot be attacked collaterally, and fourth, because the plaintiff

was guilty of laches. We think the defendant's position is unsound.

We may concede that a payment of taxes merely "under protest" does not provide a sufficient foundation to support actions of this sort. In addition to protest, taxes sought to be recovered must have been paid under circumstances from which duress can be implied. Atchison etc. R. Co. v. O'Connor, 223 U.S. 280, 286, 32 S. Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C, 1050. We find such circumstances here.

Chapter 80 of the Revised Laws of New Hampshire under the title "Collection of Taxes" provides in Section 4 under the sub-title "Property Taxes" that:

"The collector shall give notice of such tax to every person taxed, or leave a notice thereof in writing at his abode, fourteen days at least before he shall distrain therefor, unless in cases where he has reason to believe such person is about to remove from town. But no notice of the tax shall be necessary under this section if the tax is against a person who is not an inhabitant of the state, or if the person against whom the tax was assessed has removed from the town."

Since the plaintiff is not an inhabitant of the State of New Hampshire, and since that State reserved its jurisdiction to execute civil process on the lands acquired by the United States and occupied by the plaintiff, it follows from the above section that the defendant's tax collector could summarily and without notice distrain the plaintiff's property in the event that it failed to pay the taxes assessed against it. And threat of such summary distraint, which if carried out would seriously embarrass the plaintiff in the performance of its contract with the United States, seems to us enough to indicate clearly that the taxes in issue here were not paid voluntarily in contemplation of law. Furthermore, R.L. Ch. 77, § 11 provides that "Interest at ten per cent shall be charged upon all taxes not paid on or before December first, after their assessment, from that date, which shall be collected with the taxes as incident thereto." Thus the plaintiff, in addition to the summary distraint of its property, was faced with the prospect of heavy interest charges if it did not pay its taxes when it did. Under these circumstances we can only conclude that the

---

[2] Revised Laws of New Hampshire (1942) which will be referred to hereinafter as simply R.L.

court below did not err in its conclusion that "The plaintiff in paying the taxes did not act voluntarily but under legal compulsion." Atchison etc. R. Co. v. O'Connor, supra. See also Eaton v. Noyes, 76 N.H. 52, 53, 78 A. 1080.

■ The next question for consideration is closer.

The plaintiff at no time petitioned under R.L. Ch. 77 §§ 13, 14 [3] for an abatement of the taxes assessed against it, and, although the statute does not so provide, in 1879 the Supreme Court of New Hampshire in Edes v. Boardman, 58 N.H. 580, "established the rule, which has ever since been followed, that, as to 'any error correctible on appeal' (page 594 of 58 N.H.), the remedy by a petition for abatement is exclusive." Bretton Woods Co. v. Carroll, 84 N.H. 428, 429, 151 A. 705. Then in this later case the court draws the line of demarcation between those errors which are "correctible on appeal" and those which are not by saying that in abatement proceedings "The question to be tried is whether the petitioner is unlawfully or unjustly taxed as between him and the other taxpayers. If he is, the error is one correctible on his appeal. If he is not, if the error is one common to all, he has no remedy here. The true issue in a tax abatement appeal is the plaintiff's tax liability, and not the validity of the appropriations made by the town and included in the assessment." [4] Thus it is clear that the plaintiff in the case at bar had a remedy by petition for abatement. See Boston & Maine Rd. v. State, and Amoskeag Manufacturing Co. v. Manchester, infra.

But we do not think that this was his exclusive remedy for the reason that we have found no New Hampshire case applying the rule of Edes v. Boardman, when, as here, there was no jurisdiction to impose any tax at all, and there appears a well established exception to that rule when jurisdiction to tax is lacking. Thus in Woodmere Cemetery Ass'n v. Spring-

wells, 130 Mich. 466, 468, 90 N.W. 277, the court said: "This rule [referring to the general rule as established in New Hampshire by Edes v. Boardman] does not apply to a case where the assessment is absolutely void and the property is not subject to taxation," and in Salthouse v. Board of Commissioners of McPherson County, 115 Kan. 668, 670, 224 P. 70, 71, the court said with respect to the same rule "It applies where the wrong consists in an irregularity of procedure, a mistake of fact, or an excessive estimate or other error of judgment, but not where the tax is imposed without jurisdiction * * *." See also Security National Bank v. Young, 8 Cir., 55 F.2d 616, 618, 84 A.L.R. 100, and Tumulty v. District of Columbia, 69 App. D.C. 390, 102 F.2d 254, 263, 264, in which the United States Court of Appeals for the District of Columbia said:

"The District contends here that 'the doctrine that tax assessments must be attacked through the machinery provided by the statute and are not subject to collateral attack' must control the disposition of this appeal. We are in accord with such principle of law, with the settled exception to the rule that a tax based upon a void assessment may be questioned or attacked wherever found. We think it clear that all administrative remedies in matters of taxation must be exhausted before resort can be had to court action. Nelson v. First Nat. Bank, 8 Cir., 42 F.2d 30, but think it equally clear that when the assessment is void, the taxpayer may resort to equity for relief, without following statutory remedies."

Furthermore the Supreme Court of the United States as long ago as 1886 by clear implication recognized that the general rule does not apply when jurisdiction to tax is absent when it said in Stanley v. Supervisors of Albany, 121 U.S. 535, 550, 7 S.Ct. 1234, 1239, 30 L.Ed. 1000: "To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular tax-

---

[3] "13. By Selectmen. Selectmen, for good cause shown, may abate any tax assessed by them or by their predecessors. All applications for abatement shall be in writing.

"14. By Court. If they neglect or refuse so to abate, any person aggrieved, having complied with the requirements of chapter 75, may, within six months after notice of such tax, and not afterwards, apply by petition to the superior court in the county, which shall make such order thereon as justice requires."

[4] In the Bretton Woods case the issue was the validity of votes making appropriations and the court held that the plaintiff's remedy was not by petition for abatement, but was by a bill in equity seasonably brought to enjoin the assessment and collection of the taxes required to meet the appropriations.

ation, where the assessing officers had jurisdiction to assess the property." See also Powder River Cattle Co. v. Board of Commissioners, C.C.Mont., 45 F. 323, 327.

From these cases, and we find none to the contrary, we feel warranted in concluding that if the question before us should be presented to the Supreme Court of New Hampshire it would hold, as an exception to the rule of Edes v. Boardman, that the common-law action to recover back taxes involuntarily paid under protest still exists when there was no jurisdiction to assess the taxes sought to be recovered. And, this being so, it is obvious that such an action may be maintained in a federal court when as here there is federal jurisdiction on the ground of diversity of citizenship and amount in controversy.

The next two points made by the defendant need not detain us long.

Undoubtedly a tax assessment has many of the characteristics of a judgment, and frequently it is regarded as one both in New Hampshire and elsewhere. But in Bull v. Gowing, 85 N.H. 483, 484, 160 A. 475, 476, it is remarked that not always "has there been a logical observance of the rule that a tax assessment is a judgment not subject to collateral attack", and even if this were not so, and in New Hampshire a tax assessment should be regarded as a judgment in every respect, still the assessment here would be a void judgment because it was rendered by a tribunal without jurisdiction. Thus under fully established principles it would always be vulnerable to attack.

On the question of laches it will be enough to say that we find a sufficient basis for the conclusion of the court below that the plaintiff's action was seasonably brought.

This disposes of the defendant's appeal. The plaintiff's appeal remains and the only question raised by it is whether or not the plaintiff is entitled to interest on the taxes it paid. The district court ruled that no interest could be recovered because there was no statute authorizing it. We do not agree for the reason that in Boston & Maine R. R. v. State, 63 N.H. 571, 4 A. 571, an abatement proceeding, the Supreme Court allowed interest at six per cent, R.

L.Ch. 367 § 1 on taxes paid under protest and recovered back, and this in spite of lack of statutory authority therefor, on the ground that it would be unfair and inequitable to do otherwise. It said (63 N.H. at page 573, 4 A. at page 572):

"It is not just that a tax-payer should be compelled to bear more than his share of the public expense. He would bear more than his share if he lost, and the public gained, a year's use of an excess by him paid. It could not have been the intention to impose an unjust loss of a year's interest. Justice requires that there should be an equitable adjustment of that loss. In actions at common law, involving like questions, interest would be allowed as part of the damages, and we think it should be in this case."

To the same effect, see Amoskeag Manufacturing Co. v. Manchester, 70 N.H. 336, 348, 47 A. 74.

The case of Kaemmerling v. State, 81 N.H. 405, 128 A. 6, relied upon by the defendant is not in point. In it the Supreme Court of New Hampshire held that for want of statutory authority interest could not be added to legacy taxes paid under the inheritance tax law declared unconstitutional in Williams v. State, 81 N.H. 341, 125 A. 661, 39 A.L.R. 490, and recovered in proceedings for abatement. But it did so without questioning the authority of Boston & Maine R. R. v. State; and Amoskeag Manufacturing Co. v. Manchester. Instead it distinguished those cases on the ground that it was only fair and equitable for the taxpayers in them to be allowed interest on the taxes they had paid under protest and had recovered since they, like the plaintiff here, had been forced to choose between paying the disputed tax before December 1 of the year of assessment, and in consequence losing the use of their money and running the risk of paying the high rate of interest, whereas no such choice confronted inheritance tax payers because the statute establishing that tax made ample provision for postponing the time of payment until its validity and amount could be finally determined.

The judgment of the District Court is affirmed in part and reversed in part and the case is remanded to that court for further proceedings not inconsistent with this opinion.