MONTANA ORE PURCHASING COMPANY, RESPONDENT, *v.* MAHER, COUNTY TREASURER, APPELLANT.

(No. 2,145.)

(Submitted May 2, 1905. Decided June 3, 1905.)

*Taxation—County Board of Equalization—Assessment—Increase—Failure to Give Notice—Effect—Minute Entries—Parol Evidence—Injunction—Decree.*

County Board of Equalization—Assessment—Increase—Notice.
  1. The giving of ten days' notice to the taxpayer is essential to confer upon a county board of equalization power to increase the assessed valuation of his property under section 3781 of the Political Code, or to correct such assessment under the provisions of section 3789 of the same code. In either case the ten days' notice is jurisdictional.

Same—Assessment—Increase—Notice—Waiver.
  2. Failure by the county board of equalization to give a taxpayer the ten days' notice of an increase in his assessment required by statute, is not waived by his voluntary appearance before the board, after the raise had been made, for the purpose of seeking a reduction of the assessment.

Same—Final Action of Board—Record.
  3. An entry on the minutes of the county board of equalization, after reciting errors in the returns made to the assessor by a taxpayer, directed that officer to make the proper correction in the assessment. The pleadings admitted that the board made the entry with respect to the assessment in the amount stated in the entry. *Held*, that no other changes or records being shown, a contention that final action was not taken in the matter until after the taxpayer's voluntary appearance before the board was without merit.

Same—Minute Entries—Parol Evidence.
  4. Parol evidence is inadmissible to contradict or vary recitals in the minute entries of the proceedings had before the county board of equalization, and to show that final action on an increase of assessment was not actually taken until after the date recited in the minutes.

Same—Jurisdiction of Board—Affirmative Showing—Record.
  5. As the county board of equalization, acting on assessments of property, is a special tribunal of limited and inferior powers, the facts showing its jurisdiction to act in any given instance must appear affirmatively from the record of its proceedings.

Same—Jurisdiction of Board—Notice—Minutes.
  6. Where the minutes of the county board of equalization showed that it did not meet until July 20th, and that a raise in an assessment was made July 29th, and before any appearance on the part of the taxpayer affected thereby, it was apparent that the ten days' notice of the raise, required by statute, could not have been given, and the board was without jurisdiction in the matter.

Same—Assessment—Increase—Jurisdiction—Injunction.
  7. *Held*, that where the county board of equalization made an increase in an assessment without giving the statutory notice of ten days to the person affected thereby, such notice being jurisdictional, and omission to give it not being a mere irregularity subject to explanation, injunction will lie to restrain the collection of taxes computed on the raised valuation.

Same—Decree—Payment of Taxes Admittedly Due—Condition Precedent.
  8. Where the county board of equalization raised an assessment without giving the ten days' notice required by statute, a decree enjoining the county treasurer from selling the property to pay the taxes computed on the raised valuation, without requiring, as a condition precedent, the payment of the tax admitted by the taxpayer to be due, was erroneous.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by the Montana Ore Purchasing Company against James Maher, county treasurer of Silver Bow county. From a judgment in favor of plaintiff, defendant appeals. Modified and affirmed.

*Mr. Albert Galen,* Attorney General, *Mr. F. W. Mettler,* and *Mr. J. Bruce Kremer,* for Appellant.

When one invokes a court of equity for relief against the payment of taxes, he must do equity by paying, or offering to pay, the amount justly due from him, or that part which he admits to be legal—that he must pay or tender the amount which is properly chargeable against his property, upon which condition alone relief will be granted. (21 Ency. of Pl. & Pr. 456, 457, and cases cited; 10 Ency. of Pl. & Pr. 934, and cases cited in note 3; High on Injunctions, secs. 497, 499; *Cannon* v. *Handley,* 72 Cal. 142, 13 Pac. 315; *Dodge* v. *Fearey,* 19 Hun, 272; *Summerson* v. *Hicks,* 134 Pa. St. 566, 19 Atl. 808; *Bell* v. *Clark,* 111 Pa. St. 92, 2 Atl. 80.) The tender should be continued in and by the pleadings, and the facts averred should show that it has been kept good ever since the time when it was made. (*Burlock* v. *Cross,* 16 Colo. 162, 26 Pac. 143; *Reddington* v. *Chase,* 34 Cal. 670; 21 Ency. of Pl. & Pr. 553; 25 Am. & Eng. Ency. of Law, 922, note 3.) In equity no less strictness is required in keeping good and in pleading a tender than in courts of law. (*McCalley* v. *Otey,* 90 Ala. 302, 8 South. 157. See, also, *Northern Pac. R. R. Co.* v. *Patterson,* 10 Mont. 90, 24 Pac. 704.)

Unless it appear affirmatively that a full and fair hearing was denied to it by the action of the board, the plaintiff will be deemed to have waived all irregularities by voluntarily appearing before the board and making application for a reduction. (Political Code, sec. 4014; *Avant* v. *Flynn,* 2 S. D. 153, 49 N. W. 15; *Gallup* v. *Schmidt,* 154 Ind. 202, 56 N. E.

443; *Cosier* v. *McMillan*, 22 Mont. 484, 56 Pac. 965; *Pittsburgh etc. Ry. Co.* v. *Board*, 172 U. S. 45, 19 Sup. Ct. 90; *Rockafellow* v. *Board*, 77 Iowa, 494, 42 N. W. 380; *Schottler* v. *Spring Valley Waterworks*, 62 Cal. 69; *Alliston Ranch M. Co.* v. *County of Nevada*, 104 Cal. 161, 37 Pac. 875.) "Once having appeared, the cause may proceed, no matter what irregularity there is." (*Knox* v. *Summer*, 3 Cranch, 496; *Suydam* v. *Pitcher*, 4 Cal. 280; *Louisville etc. Ry. Co.* v. *Nicholson*, 60 Ind. 158.) "A voluntary appearance is equivalent to personal service." (*Christal* v. *Kelly*, 88 N. Y. 285.) "If there is an irregularity in giving notice, the appearance of the defendant will waive the defect, and jurisdiction will attach." (*Clark* v. *Borrel*, 21 Hun (N. Y.), 594; *City of Rockland* v. *Ulmer*, 87 Me. 357, 32 Atl. 972; *Spring Valley Waterworks* v. *Schottler*, 62 Cal. 69; Wade on Notice, 1358; *Central Pac. R. Co.* v. *Standing*, 13 Utah, 488, 45 Pac. 344.)

*Mr. James M. Denny*, and *Mr. R. R. Wedekind*, for Respondent.

If an assessment is not made as prescribed by statute, it is void. (*City of San Luis Obispo* v. *Pettit*, 87 Cal. 499, 25 Pac. 694; *Grotefend* v. *Ultz*, 53 Cal. 666; *Grimm* v. *O'Connell*, 54 Cal. 522; *Hearst* v. *Egglestone*, 55 Cal. 367; *Brady* v. *Dowden*, 59 Cal. 51. See, also, *Hagar* v. *Reclamation Dist.*, 111 U. S. 701, 4 Sup. Ct. 663; *People* v. *Forrest*, 30 Hun, 240; *Moore* v. *Street Commrs.*, 134 Mass. 431; 25 Am. & Eng. Ency. of Law, 204.)

Before the commissioners could take any action toward changing the assessment-roll as presented by the assessor, whether correct or not, they must have given notice to respondent. (*Western Ranches* v. *Custer Co.*, 89 Fed. 577; *Topeka Water Supply Co.* v. *Roberts, Country Treasurer*, 45 Kan. 363, 25 Pac. 855; *Topeka City Ry. Co.* v. *Roberts, County Treasurer*, 45 Kan. 360, 25 Pac. 854; *Commissioners* v. *Lang*, 8 Kan. 284; *Griffiths* v. *Watson*, 19 Kan. 27; *Commissioners* v. *Sargent*, 24 Kan. 572; *French* v. *Edwards*, 13 Wall. 506;

Cooley on Taxation, 2d ed., 362-366; *Grant v. Bartholomew,* 57 Neb. 673, 78 N. W. 314; *San Antonio v. Hoefling,* 90 Tex. 511, 39 S. W. 918; *Hoefling v. San Antonio,* 15 Tex. Civ. App. 257, 38 S. W. 1127; *Dykes v. Lockwood Mtg. Co.,* 57 Kan. 416, 46 Pac. 711; *Pomeroy Coal Co. v. Emlen,* 44 Kan. 117, 24 Pac. 340; *Everett Water Co. v. Fleming,* 26 Wash. 364, 67 Pac. 82.)

ı "The taxpayer is entitled to the remedy of injunction, although he may have first asked the board to cancel and set aside the illegal assessment and levy made against him." (*Topeka City Ry. Co. v. Roberts, County Treasurer,* 45 Kan. 360, 25 Pac. 854; *Topeka Water Supply Co. v. Roberts, County Treasurer,* 45 Kan. 363, 25 Pac. 855; *Commissioners v. Lang,* 8 Kan. 284; *Griffiths v. Watson,* 19 Kan. 27; *Commissioners v. Sargent,* 24 Kan. 572; Cooley on Taxation, 2d ed., 761; *Lumber Co. v. Hayward,* 20 Fed. 422; *Huntington v. Central Pac. Ry. Co.,* 2 Saw. 514; *Carroll v. Perry,* 4 McLean, 27; *Pettit v. Shepard,* 5 Paige, 501; Story on Equity Jurisprudence, 8-17; High on Injunctions, secs. 248-529, and cases cited; Pomeroy's Equity Jurisprudence, 1345, and cases cited.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court:

This is an appeal from a final judgment. It is alleged in the complaint that after the 1st day of June, 1903, the Montana Ore Purchasing Company furnished to the county assessor of Silver Bow county a verified statement of the net proceeds of its mines for the year immediately prior to June 1, 1903, showing such net proceeds to be $601,250.23; that the county assessor extended the assessment on the rolls without change, and in the due course of his business turned over the assessment-roll to the county clerk; that afterward the county commissioners met, and organized as a board of equalization, and adopted rules, as provided by section 3781 of the

Political Code.   Rule 7 is as follows: "That a notice of ten days from date in writing be given to property owners or their agents, to appear before the board of equalization, and show cause why assessments for the current year should not be increased."

It is further alleged that, without giving the respondent company any notice whatever, its assessment was increased to $843,346; that respondent tendered the amount of taxes due upon the assessed valuation of $601,250.23, but this was refused, and the taxes computed upon the valuation of $843,346 demanded; that the county treasurer afterward advertised the property of the respondent company for sale to pay the taxes then delinquent.   Ability, readiness, and willingness to pay the tax admitted to be due is alleged.   The prayer is that it be adjudged that the increase in respondent's assessment, together with the tax levied upon such increase, be declared void, that the court adjudge that the amount tendered is the correct amount due for its taxes, and that an injunction issue to prevent the sale of its property.

The answer raises but few issues.   It is alleged that the return made by the respondent company to the assessor contained information from which it appeared that a mistake in calculation had been made, and that according to such return the sum of $843,346.24 was the actual value of the net proceeds of respondent's mines.   It is also alleged that the respondent appeared before the board of equalization and sought a reduction of its assessment.

The cause was tried to the court, which found in favor of respondent, and entered a decree adjudging that the tax levied upon the increased assessment of $242,096.01 was void, and that the amount tendered by the plaintiff company was the amount of taxes legally levied upon its property, and enjoined the treasurer from proceeding further in the matter of the sale of its property.   From this judgment the county treasurer appeals.

Only three questions are presented for determination: 1. Was the act of the board of equalization in correcting the respondent's assessment and raising the valuation of its property for the purpose of taxation from $601,250.23 to $843,346.24, without first giving notice to the respondent, illegal, and the tax on such increase void? 2. Did the voluntary appearance of the respondent before the board, after the change had been made, cure the lack of notice in the first instance? 3. Did the respondent pursue the proper remedy? These questions have all been determined by comparatively recent decisions of this court.

1. The authority of the county board of equalization to make any increase in the assessed valuation of property, or to order the assessor to make any correction in an assessment which has the effect of adding to the amount of taxes which the taxpayer will be called upon to pay, is found in sections 3781 and 3789 of the Political Code, which sections read as follows:

"Sec. 3781. The board has power, after giving notice in such manner as it may, by rule, prescribe, to increase or lower any assessment contained in the assessment-book, so as to equalize the assessment of the property contained therein, and make the assessment conform to the true value of such property in money."

"Sec. 3789. During the session of the board of county commissioners it may direct the assessor to assess any taxable property that has escaped assessment, or to add to the amount, number, or quantity of property when a false or incomplete list has been rendered, and to make and enter new assessments (at the same time canceling previous entries) when any assessment made by him is deemed by the board so incomplete as to render doubtful the collection of the tax; but the clerk must notify all persons interested, by letter deposited in the postoffice, postpaid, and addressed to the person interested, at least ten days before action is taken, of the day fixed when the matter will be investigated."

As the board by its rule No. 7, prescribed that ten days' previous notice should be given before an increase in an assessment should be made, it becomes entirely immaterial whether this change be considered as one made by the board for the purpose of increasing the assessed valuation of this company's property, as provided by section 3781 above, or whether it be considered as a correction which the board ordered the assessor to make under the provisions of section 3789 above; for in either event ten days' previous notice to the taxpayer was essential to confer upon the board power to make the change in the one instance, or to order it done in the other.

This question was lately fully discussed by this court and determined in *Western Ranches, Ltd.,* v. *Custer County,* 28 Mont. 278, 72 Pac. 659, and that case is decisive of this question.   In that case the board proceeded under section 3789.   There was a failure to give notice to the taxpayer, as in this instance, and respecting the action of the board in making such change without previous notice to the taxpayer this court said: "It is patent that the board had no jurisdiction to increase the plaintiff's assessment without first giving the ten days' notice provided by statute," and then quoted with approval the following language from the case of the same title in 89 Fed. 577: "Did the failure to give the notice before the listing of the property invalidate the tax?  I think it did.   The notice required by this section was for the protection of the taxpayer, and intended to give him a hearing before the listing of his property in a supplemental list, and was jurisdictional.   Without such notice the board of equalization has no right to order the assessor to make the supplemental list: Cooley on Taxation, 2d ed., 362-366; *French* v. *Edwards,* 13 Wall. 506, 20 L. Ed. 702; *Powder River · Cattle Co.* v. *Board of Commissioners of Custer Co.* (C. C.), 45 Fed. 323; *Dykes* v. *Mortgage Co.,* 2 Kan. App. 217, 43 Pac. 268." (See *State* v. *Equalization Board,* 18 Mont. 473, at 477, 46 Pac. 266, 267; 27 Ency. of Law, 2d ed., 704, 705, and numerous cases cited.)

2. Was the failure to give notice cured by the company's voluntary appearance on August 7th and 10th, after the raise had been made? This question also was determined by this court in the case cited above, where it is said: "The failure to give plaintiff the required notice having rendered the tax illegal because the board had acquired no jurisdiction to act with reference thereto, the fact that the plaintiff voluntarily appeared on August 8th, and asked a reduction of its assessment, which was partially granted, did not obviate or waive the want of jurisdiction in the board's original action. This question was not raised in *Cosier* v. *McMillan,* 22 Mont. 484, 56 Pac. 965, cited by defendant. Plaintiff was seeking a reduction of its assessment, and therefore properly appeared before the board to ask the same. (*Barrett* v. *Shannon,* 19 Mont. 397, 48 Pac. 746.)"

Some contention is made, however, that final action in the matter of this change of valuation was not taken until after the voluntary appearance of the company's representatives; but there is no merit whatever in this. The minutes of the board show the following entry respecting this change, made on July 29, 1903: "In the matter of the assessment of the M. O. P. Co., for 1903: Whereas, it appears that said company has made returns to the assessor showing 293,332 tons extracted at a cost of $3.54 per ton, or a total of $1,039,028.88; and whereas, the total amount is incorrect, as the figures should read $1,038,-395.28; and whereas, the cost of reduction per ton is figured wrong, the figures returned to the assessor showing $3.62 per ton for reduction, or a total of $1,303,564.69, according to tonnage returned, the figures should read $1,061,861.84; and whereas, the above errors show a discrepancy in the net proceeds as returned by said company of $242,096.01: Now, therefore, it is hereby ordered that the county assessor make the proper correction in said assessment of the net proceeds of the said M. O. P. Co., and assess said company with the full amount of the net proceeds, as shown by their returns on the tonnage extracted and reduced." And the pleadings admit

that the board made, or caused to be made, these entries with respect to the company's assessment, to wit: "Increased by board of equalization, $242,096. * * * Total assessed value as equalized by county board of equalization, $843,346." So far as this record discloses, these were the only changes made and the only records of the same.

Defendant in the court below, over the objection of the plaintiff company, sought to show by the oral examination of the chairman of the board that final action was not actually taken on July 29th; but the effect of such testimony was to vary or contradict the recitals in the minute entries of the board's proceedings by parol testimony, and this cannot be done. (*State* v. *Crookston Lumber Co.,* 85 Minn. 405, 89 N. W. 173; 27 Ency. of Law, 2d ed., 717.) Furthermore, as the board of equalization, acting on assessments of property, is a special tribunal of limited and inferior powers, the facts showing its jurisdiction to act in any given instance must appear *affirmatively* from the record of its proceedings. (*Copper Queen Con. M. Co.* v. *Board* (Ariz.), 65 Pac. 149; 27 Ency. of Law, 2d ed., 717.) There is no pretense that the minutes of the board show that any notice was given; nor is it even contended that any notice in fact was given to the company before the raise was made. Those minutes do show that the raise was made on July 29th, and before any appearance on the part of the company, and before ten days' notice could possibly have been given, for the board did not meet until July 20th. The decision in the *Custer County Case* above is conclusive here. That decision in this particular is reaffirmed, and the doctrine therein announced applied.

3. Did the plaintiff pursue the proper remedy? Section 4023 of the Political Code provides: "No injunction must be granted by any court or judge to restrain the collection of any tax or any part thereof, nor to restrain the sale of any property for the nonpayment of taxes, except: 1. Where the tax, or the part thereof sought to be enjoined, is illegal, or is not authorized by law. * * * 2. Where the property is exempt

from taxation." This section was adopted as a part of the Code. At the same session of the legislature at which the Codes were adopted, an Act was passed and approved March 18, 1895, and by direction of the legislature the sections of this last-named Act were incorporated in the Political Code, and became sections 4024, 4025, and 4026. Sections 4024 and 4025, above, provide for the payment under protest of taxes demanded, and for a suit at law to recover back the whole, or any part thereof, deemed by the taxpayer to be unlawful, and of this statutory remedy section 4026 says: "The remedy thereby (hereby) provided shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded, except in unusual cases where the remedy hereby provided is deemed by the court to be inadequate."

A consideration of sections 4023 and 4026 leads us to believe that the phrase "irregularly levied or demanded" was used by the legislature advisedly, and as prescribing the limits wherein the statutory remedy is exclusive, as distinguished from those cases of illegal taxes the collection of which may be restrained by injunction. In other words, if the action of the assessor or board of equalization was such that the tax complained of is manifestly void under any circumstances, injunction will lie to restrain its collection; but, if the error complained of is only an irregularity on the part of the assessor, the board of equalization, or the treasurer, which may be subject to explanation so as to cure the apparent defect, or, in other words, where the tax complained of is not necessarily void under all circumstances, then the remedy provided by sections 4024 and 4025, namely, payment under protest and an action to recover back is exclusive, except in those unusual cases mentioned in section 4026. This is the effect of the decision in *Cobban* v. *Hinds,* 23 Mont. 338, 59 Pac. 1, where it is said: "Sections 4023 to 4026, inclusive, of the Political Code, prohibit courts and judges from enjoining the collection of any

tax, and from restraining the sale of the property for nonpayment of any tax, except in those instances where the tax is illegal, or not authorized by law, or where the property is exempt from taxation, and provide the means and remedies whereby the rights of persons who deem the taxes irregularly or improperly demanded of the owners, or sought to be enforced against the property, may be guarded and protected."

At the time of the decision in the *Custer County Case,* above, the decision in *Cobban* v. *Hinds* seems to have been overlooked, and language is to be found in the opinion in the *Custer County Case* which might seem to support a view contrary to the one held in the *Cobban Case;* but the conflict in the decisions is more apparent than real, and, while we think that some of the language in the *Custer County Case* is too broad, these decisions are easily reconcilable.  So far as this branch of the case was concerned, the only question involved in the *Custer County Case* was: May one whose assessment has been increased by the board of equalization, without notice to him, where the increase is without authority and the tax on such increase illegal, pay the entire tax charged against him and sue to recover back the illegal portion, under sections 4024 and 4025, *supra,* or is his remedy one in equity exclusively, as provided by section 4023 above?  We held that the complaining taxpayer might pursue the statutory remedy, and this was all that was necessary to decide in that case respecting this subject.  We think the decision in this regard correct.  It simply means that, while one may have a sufficient cause of action to justify him in proceeding in equity, if he elects to proceed at law, he may do so.  Of course, the converse of that proposition is not true; for if one has a remedy at law, which is plain, speedy and adequate, he cannot have any standing in a court of equity. In the *Custer County Case* the board of equalization directed the assessor to add to the plaintiff's assessment a large amount of property which the plaintiff did not own.  This increase was made without notice to the taxpayer, but the entire tax was paid, and a statutory action brought to recover back the

portion of the tax which was illegal. In this court the question was raised as to whether the plaintiff could pursue the statutory remedy, or whether the remedy was not one in equity. Respecting this we said: "We think the plaintiff pursued *the* proper remedy in paying the taxes demanded under protest, and afterward bringing suit to recover them." We might more properly have said that the plaintiff pursued *a* proper remedy at its disposal; and, had we done so, the decision would have appeared more completely in harmony with the decision in the *Cobban Case.* But, when read in the light of the particular question presented for determination, the language used is not misleading, and there was no intention on the part of this court to announce a rule different from the one in the *Cobban Case.*

In the *Custer County Case* it is said that if there is any conflict between the provisions of section 4023 and the Act of March, 1895, the latter provisions control. It is to be observed that we did not say that there is in fact any conflict; and upon further consideration, and in view of the decision in the *Cobban Case,* we think there is in fact no conflict whatever, and that the construction placed upon section 4023 and the Act of March 18, 1895, by this court in the *Cobban Case,* is logical. By this construction section 4023 and the provisions of the Act of March 18, 1895, remain in full force and effect, and this conclusion satisfies the rule of statutory construction, which requires such a result, if possible.

4. The decree: The decree entered in this case is erroneous in enjoining the county treasurer from proceeding to sell the property of the respondent company without requiring the payment of the tax admitted to be due as a condition precedent. The cause is remanded to the district court, with directions to modify the decree by adding a provision requiring payment of the tax admittedly due within ten days after such modification is made and the respondent notified thereof, and upon failure by respondent to make such payment within the time limited the injunction be dissolved and the action dismissed. With

this modification, the judgment will be affirmed; but each party will be required to pay his own costs of this appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.